Donald R. **HAGEN** and Mary Katherine Hagen Nichol, individually, and as parents and natural guardians of Martha Ann Hagen, Plaintiffs,

v.

**RICHARDSON–MERRELL, INC.,** a Delaware corporation, Defendant.

No. 84 C 2628.

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1988.

Eugene I. Pavalon, Gary K. Laatsch, Asher, Pavalon, Gittler, Greenfield and Segall, Ltd., Chicago, Ill., Barry J. Nace, Paulsen, Nace & Narwind, Washington, D.C., for plaintiffs.

Douglas P. Roller, Clifford E. Berman, Rooks, Pitts & Poust, Chicago, Ill., Frank C. Woodside, III, Joseph & Conley, Jr., Frederick N. Erng, Dinsmore & Shohl, Cincinnati, Ohio, for defendant.

## ORDER

NORGLE, District Judge.

Before the court are various motions filed by defendant Richardson–Merrell, Inc. ("Merrell Dow"). Merrell Dow moves for summary judgment, *see* Fed.R.Civ.P. 56(b), on the issue of causation. Defendant also moves for partial summary judgment as to

punitive damages, or in the alternative to bifurcate the issue of causation at trial. *See* Fed.R.Civ.P. 42(b). Merrell Dow finally moves for judgment on the pleadings as to Counts II and III based on the relevant statute of limitations, and Counts IV and V based on the relevant statute of repose. *See* Fed.R.Civ.P. 12(c). For the following reasons, summary judgment is denied as to causation and granted as to punitive damages. Judgment on the pleadings is granted as to the plaintiff-parents' claims under Counts II, III, IV and V.

## FACTS

Mrs. Mary Katherine Hagen Nichol ("Mrs. Hagen)" became pregnant approximately April 30, 1975. Mrs. Hagen experienced nausea and vomiting during pregnancy, and her doctor prescribed Bendectin to ease these symptoms. The medication was prescribed on June 3, 1975, and Mrs. Hagen continued to ingest it until her fourth month of pregnancy. Merrell Dow was the maker of Bendectin. Mrs. Hagen's child, Martha Ann Hagen, was born on January 7, 1976. Martha was born with a malformation of both hands known as ectrodactyly (also known as lobster-claw or split-hand malformation).

Donald Hagen (Martha's father) and Mrs. Hagen filed an eight count complaint on March 27, 1984, in which they assert individually and on behalf of Martha various theories of recovery against Merrell Dow. In essence, they allege that Mrs. Hagen's ingestion of Bendectin during the critical fetal period for limb development caused the birth defect with which Martha was afflicted at birth.

Numerous other cases involving the same basic issues are cited by both parties. While reference to those cases is appropriate, the determination of the issues in those cases does not bind this court or affect the court's independent analysis of the issues presented here.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judg-ment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

## SUMMARY JUDGMENT AS TO CAUSATION

■ Merrell Dow presents evidence which tends to show that: 1) Martha's affliction was the result of a gene defect or new mutation of a gene in either the father's sperm or the mother's egg; 2) the only way the ingestion of a drug could have caused Martha's abnormality is if the drug were a mutagen (mutation causing medication) and if it were ingested during the formation of the germ cell (before or at the time of conception); and 3) because Mrs. Hagen ingested the Bendectin long after conception, the medication could not have caused Martha's birth defects. Plaintiffs, on the other hand, present evidence which tends to demonstrate that: 1) Bendectin, specifically its antihistamine component, doxylamine succinate, has been shown to be a human teratogen (a drug which causes abnormal development) in *in*

*vitro* studies, human studies, animal tests, and by its chemical structure-activity; 2) Bendectin has been shown to have a teratogenic effect on limb development; and 3) Martha's abnormalities are the result of Mrs. Hagen's ingestion of Bendectin during the critical period of limb formation. Specifically, plaintiffs present the affidavits of Dr. William G. McBride and Dr. Stuart A. Newman. While Dr. Newman implies in his testimony that Mrs. Hagen's ingestion during this critical period *could have caused* Martha's abnormality, Dr. McBride testifies unequivocally that Martha's afflictions are the result of the ingestion of Bendectin during this period. Both affidavits present evidence which is probative on the issue of causation. The court finds material issues of fact clearly abound in this case. Substantial scientific evidence exists on both sides to support the conflicting arguments regarding causation.

■ Merrell Dow's attacks on the integrity of Dr. McBride are irrelevant with regard to this summary judgment motion. Under Federal Rule of Evidence 702, Dr. McBride appears to be competent to testify as an expert on these matters. *See* Fed.R. Civ.P. 702. The issue of his credibility is reserved for the trier of fact and cannot be determined at this juncture. Moreover, Merrell Dow's attack on the admissibility of the studies, upon which Dr. McBride partly bases his opinion, is equally meritless. Under Federal Rule of Evidence 703, if the data is of the type reasonably relied upon by experts in that particular field in forming opinions, the data need not itself be admissible. *See* Fed.R.Civ.P. 703. Merrell Dow has not demonstrated affirmatively that the studies are not of the type which experts reasonably rely upon in that field. The mere citation of language to that effect in *Lynch v. Merrell–National Laboratories,* 646 F.Supp. 856, 866–67 (D.Mass.1986), *aff'd,* 830 F.2d 1190 (1st Cir. 1987) does not determine the admissibility of Dr. McBride's opinion here.

In sum, Merrell Dow's motion for summary judgment on the issue of causation is denied.

## PARTIAL SUMMARY JUDGMENT REGARDING FRAUD AND PUNITIVE DAMAGES

Plaintiffs seek punitive damages in every count except Count III. In Count I, plaintiffs assert a theory of fraud and misrepresentation, while in Count VII plaintiffs allege malice, oppression or fraud as a basis for an award of punitive damages. Merrell Dow moves for partial summary judgment on the issues of fraud and punitive damages arguing that no questions of fact exist and that as a matter of law plaintiffs cannot recover under these theories.

Under Illinois law, in an action alleging fraud, a plaintiff must show that: 1) defendant made a false statement of material fact; 2) defendant knew or believed the statement to be false; 3) defendant intended to induce the plaintiff to act; 4) plaintiff acted in reliance on the truth of defendant's statement; and 5) plaintiff suffered damage as a result of his reliance. *Michaels v. Michaels,* 767 F.2d 1185, 1205–06 n. 8 (7th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986), *citing, Soules v. General Motors Corp.,* 79 Ill.2d 282, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980). Fraud is never presumed and must be established by "clear and convincing" evidence. *Hofmann v. Hofmann,* 94 Ill.2d 205, 68 Ill.Dec. 593, 600, 446 N.E. 2d 499, 506 (1983); *Mercado v. United Investors, Inc.,* 144 Ill.App.3d 886, 98 Ill.Dec. 702, 707, 494 N.E.2d 824, 829 (1986). Under *Anderson v. Liberty Lobby,* a court on summary judgment applies the same evidentiary standard (i.e. "clear and convincing" evidence) as would be required at trial in determining whether a genuine issue of fact exists as to a material element of plaintiff's cause of action. 106 S.Ct. at 2515.

It has long been established under Illinois law that to recover for punitive damages, a plaintiff must prove that the alleged tort was committed with "fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.,* 74 Ill.2d

172, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978), *citing, Consolidated Coal Co. v. Haenni*, 146 Ill. 614, 35 N.E. 162 (1893). Malice involves committing an act in a "spirit of mischief or criminal indifference to civil obligations." *Stogsdill v. Manor Convalescent Home, Inc.*, 35 Ill.App.3d 634, 343 N.E.2d 589, 608 (1976). In product liability cases specifically, punitive damages are recoverable only when the defendant's conduct "reflects a flagrant indifference to the public safety." *Moore v. Remington Arms Co.*, 100 Ill.App.3d 1102, 56 Ill.Dec. 413, 422, 427 N.E.2d 608, 617 (1981). The court will address the facts relating to both fraud and punitive damages simultaneously. Indeed, the facts relating to the merits of plaintiffs' claim of fraud also relate to the punitive damages issue.

In support of their claim for punitive damages and/or fraud plaintiffs assert various allegations including that Merrell Dow: 1) failed to conduct sufficient pre-marketing testing on Bendectin; 2) relied on the Staples study and the Bunde–Bowles epidemiological study which plaintiffs contend Merrell Dow knew contained erroneous pieces of evidence and methodological errors; 3) inaccurately labelled and advertised the product; 4) destroyed rabbit fetal specimens; 5) misrepresented Bendectin's effectiveness and safety to the medical community and the Food and Drug Administration ("FDA"); and 6) prepared "laudatory" articles for submission to medical journals. The court is cognizant of the fact that at least three other courts have granted summary judgment regarding punitive damages in Bendectin cases, but will address the specific evidence presented here regarding these particular plaintiffs' claims.

### Pre–Marketing Testing

■ The first issue is whether the failure of Merrell Dow to conduct any pre-marketing testing is evidence of wilful and wanton conduct or of fraud. The FDA approved Bendectin for marketing in the United States in 1957. The court agrees with the court in *Koller v. Richardson–Merrell, Inc.*, 1983 Prod.Liab.Rptr. (CCH)

¶ 9583, 23,563, 23,565 (D.D.C.1983) that the lack of pre-marketing testing is not relevant on the issues of fraud and punitive damages. Plaintiffs admit that a significant number of animal and epidemiological studies were conducted in the two decades following the introduction of Bendectin. In other words, Bendectin was the subject of numerous scientific tests before Mrs. Hagen ingested the drug in 1975. In order to succeed on punitive damages and fraud claims, plaintiffs must show that at the time Mrs. Hagen ingested Bendectin Merrell Dow had the intent to defraud, or acted with flagrant indifference to public safety. The issue of whether Merrell Dow should have conducted pre-marketing studies is simply irrelevant to this determination given the significant testing carried out by Merrell Dow subsequent to the introduction of the drug.

### Staples Study

■ In 1963, Robert E. Staples, Ph. D. used rabbits in conducting a teratology study on Bendectin. Plaintiffs allege Merrell Dow changed or falsified certain pieces of evidence which indicated Bendectin to be teratogenic. They also contend that Merrell Dow altered the result of the study before publishing it and failed to follow Dr. Staples' recommendation to conduct further studies.

The last allegation can easily be dismissed. A scientist who does not as a matter of course suggest further study into a specific scientific issue is likely a rarity in the field of research. In any event, further studies were conducted after the Staples study and before Mrs. Hagen ingested Bendectin. Thus, the allegation is irrelevant to a determination of Merrell Dow's motive in the 1970's.

Similarly, the allegations of falsified pieces of evidence and altered disclosures to the FDA as evidence of fraud or wanton and wilful conduct are without merit. Prior to 1980, the FDA investigated these very concerns (including reviewing laboratory notebooks) and in 1980 issued a letter which concluded that any variations

between original Staples study data and the report submitted to the FDA were justifiable given the research methodology. Moreover, the court adopts the reasoning of the court in *Koller*, at 23,565–23,566 in finding that the allegations of misreporting of the Staples study results have no validity.

### Bunde–Bowles Study

■ The Bunde–Bowles epidemiological study was conducted in 1962–63 by Dr. Carl Bunde and his assistant Donald Bowles. The study collected data from obstetricians throughout Canada and the United States who reported on patients treated with Bendectin during the first trimester and on matched "control" patients. Dr. Bunde concluded that the data showed no association between Bendectin and birth defects, with more malformations actually having occurred in the "control" group.

If indeed there were any methodological errors in the study there is no evidence that the errors were known by Merrell Dow. Dr. Bunde testified that they relied upon the obstetricians to provide accurate data and were unaware of any errors. The court agrees with the court in *Koller* that plaintiffs "have failed to advance any reason why defendant was not entitled to rely on the various information-gatherers who obtained data in the epidemiological studies." *Koller*, at 23,566. In sum, plaintiffs have provided no evidence showing that Merrell Dow had any knowledge of the alleged errors.

Moreover, the fact that the first trimester was the focus of the Bunde–Bowles study (rather than specifically the allegedly critical first 46 days after conception) does not demonstrate that Merrell Dow knew that this was a deficiency. Merrell Dow had no reason to know that only the critical first 46 days of pregnancy should have been the focus of a study. In fact, the study itself stated that the first trimester was being used to determine if Bendectin was associated with *any* congenital malformations, not just limb malformations.

### Other Evidence Regarding Punitive Damages and Fraud

■ Plaintiffs allege that Merrell Dow acted fraudulently by representing in its labelling, advertising and Physician Desk Reference inserts that Bendectin was safe, and that such representations were knowingly false. The representation to the public that the product was safe during the period prior to Mrs. Hagen's ingestion of it was supported by the evidence available at the time. Uncontradicted evidence did not exist then (nor does it exist today) that Bendectin causes birth defects. Thus, it is illogical for plaintiffs to assert that Merrell Dow had a duty to warn the public of alleged detrimental effects caused by ingestion during pregnancy when the existence of such effects had not been demonstrated conclusively.

Moreover, the destruction of animal fetal specimens does not demonstrate evil intent or motive. Testimonial evidence demonstrates that these specimens had been retained for several years and the preserving liquid had evaporated over time, rendering the specimens useless. The study using these specimens had been completed and the results recorded for several years. Merrell Dow had no duty to preserve these specimens indefinitely. The fact that they may have inadvertently not followed their own recommendations on the preservation of specimens in teratological studies does not raise material questions as to the motives of Merrell Dow, especially since no Bendectin litigation was pending at the time.

The court also finds that Merrell Dow did not misrepresent the effectiveness of Bendectin in controlling nausea. Efficacy studies performed by Merrell Dow demonstrate that Bendectin indeed was effective in the form available in 1975.

The fact that Merrell Dow was involved in the publication of what plaintiffs term "laudatory articles" is yet another vague allegation on the part of plaintiffs which is not probative of Merrell Dow's intent. Plaintiffs do not demonstrate that what the articles stated concerning the safety and effectiveness of Bendectin was untrue. In

the marketing of any product, the manufacturer has the right to circulate positive literature regarding the product as long as the information contained therein is not false. Thus, allegations of publication of "laudatory articles" is totally irrelevant on the issues of fraud and punitive damages.

Moreover, plaintiffs' attempt to establish malice on the part of Merrell Dow by referring to Merrell Dow's role in problems associated with Thalidomide and MER–29 is also meritless. The issue here is Merrell Dow's knowledge of any established teratological effects associated with Bendectin and not its marketing of any other products. As defendant states, reference to this evidence is irrelevant and highly prejudicial to Merrell Dow.

In addition, plaintiffs contend that Merrell Dow ignored the results of the Heinonen/Shapiro study "which showed strong evidence of teratogenicity...." The court has examined the published results of that study and finds plaintiffs are blatantly incorrect in their assertions. The authors of the study found:

> The data presented here give no evidence that doxylamine succinate or dicyclomine taken in pregnancy are related to congenital malformations, perinatal mortality rate, birth weight, or IQ score. Certain of the malformation outcomes showed somewhat elevated rates, but the associations were modest and they could have been due to chance. Outcomes with substantial numbers of children did not give evidence of a relationship with either drug. In addition, there was no evidence that the drugs influenced perinatal mortality rates, birth weight, or IQ scores.

> . . . . .

> In conclusion, we find no evidence that two of the three components of Bendectin are harmful to the fetus. However, it is rarely possible in studies of this type to completely rule out some teratogenic effect. Given the confidence limits in this study, it remains possible that a teratogenic effect could have escaped detection. The findings in this study are in agreement with those reported by other investigators. Taken together, the studies are reassuring in that they suggest that Bendectin does not appear to be harmful to the fetus.

*American Journal of Obstetrics & Gynecology,* Vol. 128, 480, 484 (1977).

Plaintiffs also place particular emphasis on a memorandum written by Frederick Lamb, Merrell Dow's legal counsel, which stated, "Bendectin is not an obligatory teratogen as thalid [Thalidomide] (for example)." Plaintiffs imply that by saying "Bendectin is not an obligatory teratogen" that Mr. Lamb was in essence saying "Bendectin is a non-obligatory teratogen." This construction is without foundation and was expressly rejected by Mr. Lamb in his deposition testimony. Plaintiffs are merely speculating as to the intent of Merrell Dow with regard to this note.

In conclusion, the court has reviewed all the evidence submitted by plaintiffs regarding the issues of fraud and punitive damages. While every piece of evidence cannot be specifically addressed in this opinion, the court finds that plaintiffs have failed to present any "clear and convincing" evidence of fraud. Further, plaintiffs have not presented evidence which creates any genuine issue of material fact that Merrell Dow acted with "wanton and wilful disregard for the rights of others" or with a "flagrant indifference to public safety." Plaintiffs' allegations and the "evidence" in support of those allegations amount to nothing more than pure speculation as to Merrell Dow's intent regarding its continued marketing of Bendectin in the early and mid–1970's. Thus, Merrell Dow's motion for summary judgment, as to punitive damages and on plaintiffs' claim of fraud, is granted.

## JUDGMENT ON THE PLEADINGS

■ Merrell Dow also moves for judgment on the pleadings: 1) as to Counts II and III based on the relevant statute of limitations; and 2) as to Counts IV and V based on the relevant statute of repose. The court will address the merits of each motion separately.

Because jurisdiction over the parties' dispute is based on the diverse citizenship of the parties, *see* 28 U.S.C. § 1332, the court looks to Illinois' substantive law to resolve these issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In determining the content of the law to be applied, the court's duty is to apply the state law that would be applied by the Illinois Supreme Court. *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986). Intermediate appellate court opinions are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case. *Id.*

In Count II, plaintiffs assert a claim for breach of the implied warranties of merchantability, fitness for ordinary purpose, and fitness for particular purpose. In Count III, plaintiffs allege breach of express warranties as to the nature, properties and safety of Bendectin. The Uniform Commercial Code ("UCC"), codified under Illinois statute, provides the statute of limitations for breach of warranty claims:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made,....

Ill.Rev.Stat. ch. 26, ¶ 2–725(1), (2) (1985). The clear importation of the above-cited language is that the 4–year statute of limitations begins to run for a breach of warranty claim upon delivery of the product *"regardless of the aggrieved party's lack of knowledge of the breach."* Illinois courts have strictly construed this provision in just this manner. *See Moorman Manufacturing Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 757, 435 N.E.2d

443, 454 (1982); *Nelligan v. Tom Chaney Motors, Inc.*, 133 Ill.App.3d 798, 88 Ill.Dec. 826, 829, 479 N.E.2d 439, 442 (1985) ("the language of the statute, as interpreted by the courts of this State, clearly proscribes the application of the discovery rule in breach of warranty cases," citing to *Moorman*); *Stoltzner v. American Motors Jeep Corp.*, 127 Ill.App.3d 816, 82 Ill.Dec. 909, 910–11, 469 N.E.2d 443, 444–45 (1984); *Tomes v. Chrysler Corp.*, 60 Ill.App.3d 707, 18 Ill.Dec. 71, 74, 377 N.E.2d 224, 227 (1978) ("the 'time of discovery rule' is inapplicable"); *Beckmire v. Ristokrat Clay Products Co.*, 36 Ill.App.3d 411, 343 N.E.2d 530, 532 (1976) ("The mere expectation, however reasonable, that due to the nature of a particular product the statute of limitations on the warranty begins to run upon discovery of the defect is not an adequate basis for ignoring the clear language of the statute ... plaintiff's cause of action accrued and the statute of limitations began to run from the time the [product] was delivered.")

Moreover, while the Illinois legislature has expressly applied the discovery rule to strict liability claims, *see* Ill.Rev.Stat. ch. 110, § 13–213(d) (1985), as noted above it has expressly denied the applicability of the discovery rule to breach of warranty claims. Given the statutory dichotomy on the applicability of the discovery rule to these two types of claims, the intent of the legislature is clear: the discovery rule does not apply to breach of warranty claims.

In this case, Martha Hagen was born on January 7, 1976. The delivery of the Bendectin to the mother could have occurred no later than that date, when the 4–year statute of limitations began to run. The last possible date within which to file a breach of warranty claim was January 7, 1980. The present complaint was filed March 27, 1984, well beyond the period of limitation. Thus, plaintiff-parents' breach of warranty claims under Counts II and III are time-barred.[1]

1. Merrell Dow asserts in its reply memorandum that Martha Hagen's individual breach of warranty claims are time-barred as well and it is entitled to judgment on the pleadings on those claims. Merrell Dow did not initially move for judgment on the pleadings as to Martha Hagen's claims under Counts II and III or Counts IV and V. The court will not rule on this important

Plaintiffs cite the Illinois Supreme Court case of *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 421 N.E.2d 869 (1981) as supporting the proposition that the discovery rule applies to breach of warranty claims. *Witherell* appears to hold as such. However, the *Witherell* court relied on product liability cases which applied the discovery rule only to claims for strict liability and not to claims for breach of warranty. *See Berry v. G.D. Searle & Co.*, 56 Ill.2d 548, 309 N.E.2d 550 (1974); *Williams v. Brown Manufacturing Co.*, 45 Ill.2d 418, 261 N.E. 2d 305 (1970). While the holding in *Witherell* is difficult to reconcile, given the fact that *Witherell* relied on inapposite caselaw and the *Moorman* case as well as several appellate court cases were decided after *Witherell*, and that the plain and ordinary meaning of the language of the statute itself is readily apparent, the court finds the holding of *Witherell* has been weakened if not implicitly overruled. The discovery rule, according to Illinois statute and the interpretation of that statute by the Illinois Supreme Court, does not apply to breach of warranty claims.

■ In Counts IV and V, plaintiffs assert claims for strict liability under common law and strict liability based on violation of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, respectively. The statute of repose for strict liability claims is contained in section 13–213(d) of the Illinois Code of Civil Procedure, which states:

> [T]he plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage, *but in no event shall such action be brought more than 8 years after the date on which such personal injury, death or property damage occurred.*

Ill.Rev.Stat. ch. 110, § 13–213(d) (1985) (emphasis added). This provision applies to any cause of action accruing on or after January 1, 1979 (the effective date of the amended statute) for any product which was in or entered the stream of commerce before, on or after January 1, 1979. Ill. Rev.Stat. ch. 110, § 13–213(g) (1985).

Construing the facts in a light most favorable to plaintiffs, the alleged injury to Martha Hagen must have occurred on or before January 7, 1976, her date of birth. Plaintiffs, by filing their complaint on March 27, 1984, are alleging that they did not have knowledge of the cause of action prior to March 27, 1982. If their cause of action accrued earlier than that date, then the parents' individual claims would be barred by the 2–year provision of section 13–213(d). If the parents' claims accrued on or after March 27, 1982, the eight-year statute of repose is clearly applicable under section 13–213(g). Assuming the latter, the statute of repose began to run, at the latest, on January 7, 1976, and plaintiffs had eight years or until January 7, 1984 to file their complaint. Since the present complaint was filed March 27, 1984, the parents' individual claims are barred by the statute of repose.

Plaintiffs cite the case of *Costello v. Unarco Industries*, 111 Ill.2d 476, 95 Ill. Dec. 822, 490 N.E.2d 675 (1986) for their contention that if the statute of repose for strict liability claims had started to run before the effective date of the amendment, the statute does not bar their claims unless they had a reasonable period following the amended statute's effective date during which to file their complaint. Plaintiffs focus on Justice Clark's statement in his concurring opinion that an eight-year (the amount of time for the statute for repose itself) discovery period within which to file the claim after the amendment's effective date would be considered reasonable under the majority opinion. 95 Ill.Dec. at 827, 490 N.E.2d at 680. However, the majority opinion indicated that the court specifically declined to determine what would be a reasonable time after the effective date of amendment within which to file suit. *Id.* 95 Ill.Dec. at 825, 490 N.E.2d at

issue without a proper motion before the court. Plaintiffs must be afforded an opportunity to respond to these arguments.

678. The court in *Costello* held that a 3–year delay in filing an action, based on exposure to asbestos in 1945, was not unreasonable. However, the *Costello* holding is limited to its own facts and is distinguishable from the present case. In *Costello*, plaintiff's claim was immediately barred by the statute of repose on the effective date of the amendment because the eight-year period had long since run. Here, plaintiffs' claims were not barred by the amended statute on its effective date, but the statute continued to run after that date for another five years. The question becomes whether waiting for over a five-year period of time to file the present complaint was unreasonable.

In an analogous case, *Anderson v. Wagner*, 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979), the Illinois Supreme Court addressed the statute of repose for medical malpractice cases which requires the filing of claims no more than 4 years after the negligent act or omission. *See* Ill.Rev.Stat. ch. 110, § 13–212 (1985) (present citation). The date of the negligent act or omission (date of the injury) was construed in *Anderson* as May 20, 1973. The medical malpractice statute of repose went into effect on September 19, 1976. Plaintiffs filed their claim on June 23, 1977, more than 4 years after the date of the injury. The court held that a reasonable amount of time remained on the statute of repose after the amendment's effective date, 8 months or until May 20, 1977, during which plaintiffs could have filed their complaint. Because plaintiffs failed to file within this time, their claims were time-barred. 37 Ill.Dec. at 571, 402 N.E.2d at 573.

In this case, plaintiffs had 5 years remaining on the statute of repose within which to file their strict liability claims. The court finds, in light of *Anderson*, that the Illinois Supreme Court if faced with these facts would have determined that this five-year period was a reasonable amount of time within which to file their claims. Because plaintiff-parents failed to file their complaint within that time frame, their strict liability claims are time-barred.

CONCLUSION

Merrell Dow's: 1) motion for summary judgment as to causation is denied; 2) motion for summary judgment as to punitive damages is granted; and 3) motions for judgment on the pleadings are granted only as to plaintiff-parents' claims under Counts II, III, IV and V.

IT IS SO ORDERED.