**Bashir SAMUEL, Plaintiff,**

v.

**HOME RUN, INC., a corporation, and John H. Carter, Charles Layne and Kreigh A. Spahr, Defendants.**

No. IP 89–1294–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 10, 1992.

William H. Sparrenberger, Indianapolis, Ind., for plaintiff.

Michael R. Franceschini, Steers Sullivan McNamar & Rogers, Tom Schultz, Locke Reynolds Boyd & Weisel, Indianapolis, Ind., for defendants.

MEMORANDUM ENTRY DISCUSSING SUMMARY JUDGMENT ENTERED IN FAVOR OF DEFENDANT HOME RUN, INC. ON PUNITIVE DAMAGES CLAIM

TINDER, District Judge.

Paragraph eight of Plaintiff's Amended Complaint alleges that Defendant Home Run Inc. "was guilty of reprehensible conduct, oppressive and malicious action, gross negligence and intentional reckless, willful, and wanton misconduct in that it did violate and disregard the applicable laws of the State of Indiana...." (Pl.'s Am. Compl. ¶ 8.) Based upon that allegation, Plaintiff prayed for a judgment of punitive damages—apparently (and incorrectly) against *all* Defendants. Plaintiff's claim for punitive damages is not supported by the evidence required at this stage of the proceedings. Therefore, Defendants' Motion for Partial Summary Judgment will be GRANTED.

I. BACKGROUND [1]

This personal injury action is prosecuted by a passenger, who was traveling in an

---

**1.** As explained below, there are no *material* facts in evidence or in dispute about the issue to

automobile which struck the rear-most of three parked semi-tractor trailers. The three natural person Defendants each drove a semi tractor-trailer for the corporate Defendant Home Run Inc. ("Home Run") on the date of the accident. Prior to the accident, these three semi tractor-trailers, plus a fourth, driven by Neal Riggsby, were traveling in tandem on north-bound Interstate 465. At some point, possibly due to construction in the area, the traffic on the interstate came to a stop. The four semi tractor-trailers were in the left-most or "passing" lane. (Def.'s Answers Interrogs. at 4.) Defendant Layne, whose semi tractor-trailer was first in the line of four, stalled his rig and could not restart it or take it out of gear. Layne's tractor did not restart because of failure in the electrical system; the posts on one of his batteries was badly corroded and had broken free from the battery. (Riggsby Aff. ¶ 7; Sarber Aff. at 2.)

The other three semi tractor-trailers were stopped behind Layne's. After determining that Layne needed mechanical assistance, the driver of the rear-most rig, Neal Riggsby, drove ahead. At that point, Defendant Carter's semi tractor-trailer was rear-most in line. (Def.'s Answers Interrogs. at 4.) There is a dispute about whether the drivers activated their emergency flashers. At least one of the drivers swears he turned on his flashers (Spahr Supplemental Ans. Interrogs. at 2); but, the Plaintiff submitted evidence from affiants who "did not see" any active flashers on the vehicles. (Epeards Aff. at 4; Sarber Aff. at 1.) For purposes of this Motion,

the Court will assume that none of the drivers activated his flashers.

There is also a dispute about whether Defendant Carter placed emergency triangles behind the rear of his trailer. Two Defendants stated that Carter placed three triangles behind Carter's trailer, which was the rear-most trailer. (Carter Ans. Interrogs. at 6; Layne Ans. Interrogs. at 8.) Plaintiff and some other affiants state that they "did not remember seeing" any triangles behind the rear-most trailer. (Bashir Ans. Interrogs. at 3; Bashir Dep. at 53, 114; Sarber Aff. at 1; Sarber Dep. at 92; Epeards Aff. ¶ 3; Epeards Dep. at 41.) Andre Warren, the driver of the automobile in which Plaintiff rode, stated in his deposition that he saw broken triangles in the road after the accident. (Warren Dep., correction sheet to page 43, line 11.) The Indiana State Police Officer who investigated the accident, Anthony E. Blackburn, stated in his affidavit that he "found reflector triangles which had been placed behind the semi-tractor trailer which was involved in the accident." (Blackburn Aff. ¶ 5.)

Plaintiff argues alternatively that (1) Defendants did not place any triangles behind the rear-most trailer, or (2) if they did, those triangles were not present at the time Plaintiff's automobile approached the trailer. Again, for purposes of this Motion, resolving every reasonable (and possibly unreasonable [2]) inference in favor of the Plaintiff, it will be assumed that Defendants never placed any triangles behind Carter's trailer.

True to the language of paragraph eight of the Amended Complaint, Plaintiff has

be resolved on this motion. Even if *all* the events presented by the Plaintiff were accepted as facts—including those reasonably in dispute—Plaintiff has not supported a punitive damage claim. The "facts" in this section are presented to give some background and to demonstrate that every fact asserted by the Plaintiff, if true, may support negligence—but not a reasonable inference of conduct warranting punitive damages.

**2.** Plaintiff's allegation that the Defendants' failed to activate their flashers and failed to set up emergency triangles may be taken as facts in this Entry, simply because those facts are not material to the issue at hand. However, if the

fact were material, this Court would probably find as a fact that Carter did place the triangles somewhere behind his trailer at some time. Statements that certain persons simply "did not see" the triangles may not state sufficient specific facts to create an issue when specific evidence (officer's affidavit and drivers' sworn statements) states otherwise. *See Crandall v. Prudential Ins. Co.,* 691 F.Supp. 814, 822 (D.N.J. 1989) (claim that plaintiff "never saw" notices does not create issue of fact whether they were posted); *Hall v. Ametek, Inc.,* 668 F.Supp. 417, 420 (E.D.Pa.1987) (to create genuine issue, plaintiff must state affirmatively that she looked at a place and items were not there).

submitted evidence to support his argument that the vehicles were not properly permitted to carry their loads in Indiana. Plaintiff also submitted various statutes and regulations he claims the Defendants violated. Further, Plaintiff submitted evidence which he argues creates a fact about whether maintenance procedures on the Layne vehicle were negligent. For the singular purpose of this Motion, these matters will be taken as proved also.

## II. DISCUSSION AND CONCLUSIONS OF LAW

### A. Evidence Required Under Indiana Law to Support Award of Punitive Damages

In 1982, the Indiana Supreme Court stated the current evidentiary standard required to impose punitive damages:

punitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather, some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.

Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 362 (Ind.1982) (punitive damages vacated because allegations of fraud, deceit and oppressive conduct not borne out by clear and convincing evidence). Twice the Indiana Supreme Court has revisited and reaffirmed this standard. Bud Wolf Chevrolet v. Robertson, 519 N.E.2d 135, 137 (Ind.1988) (punitive damages upheld for malicious treatment of customer); Orkin Exterminating Co. v. Traina, 486 N.E.2d 1019, 1023 (Ind.1986) (punitive damages vacated because defendant merely negligent). Decisions by the Indiana Courts of Appeals applying this standard are legion. See e.g., Erie Ins. Co. v. Hickman, 580 N.E.2d 320 (Ind.Ct.App.1991) (jury grant of punitive damages vacated because no evidence inconsistent with human failing); Eden United v. Short, 573 N.E.2d 920, 926 (Ind.Ct. App.1991); W & W Equipment Co., Inc. v.

Mink, 568 N.E.2d 564 (Ind.Ct.App.1991) (affirmed punitive damages on evidence of malicious fraud against former shareholders in closely held corporation); Watson v. Thibodeau, 559 N.E.2d 1205, 1210 (Ind.Ct. App.1990) (affirmed denial of punitive damages); Dow Chemical Co. v. St. Vincent Hosp. & Health Center, 553 N.E.2d 144 (Ind.Ct.App.1990) (affirmed punitive damages imposed because defendant withheld knowledge of faulty product).

Negligent conduct—and even grossly negligent conduct—is not sufficient to support punitive damages without the additional mental state of malice or wantonness. Bud Wolf, 519 N.E.2d at 137. A defendant must have "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." Orkin, 486 N.E.2d at 1023 (emphasis added). There must be sufficient direct or circumstantial evidence of the malfeasor's state of mind to conclude that the person recognized the danger and consciously disregarded it; mere failure recognize a dangerous situation or failure to correct a situation are not sufficient. See Orkin, 486 N.E.2d at 1023. The Court requires "obduracy," which is the state of being hardened against good or moral influence; it means hardhearted, or stubborn. Orkin, 486 N.E.2d at 1022. Defendants' conduct in question must be more than just a human failing (negligence), it must bear incidents of "iniquity," which denotes wickedness, sinfulness and moral turpitude. Plainly, punitive damages are not often warranted in negligence actions.

Because punitive damages are imposed by law solely to promote the public interest—and not to benefit injured parties or their lawyers—a finding that punitive damages are warranted is quasi-criminal in nature. Orkin, 486 N.E.2d at 1023; Travelers, 442 N.E.2d at 363. Therefore, Indiana requires that punitive damages be supported by "clear and convincing evidence" of the malfeasor's state of mind. The purpose of this higher standard is to avoid allowing punitive damages for negligent conduct alone. Travelers, 442 N.E.2d

at 362. A corollary to this higher evidentiary standard is that the defendant's conduct, though tortious, is presumed to be the result of noniniquitous human failings. *Orkin*, 486 N.E.2d at 1023. A plaintiff bears the burden of producing evidence sufficient to rebut this presumption. *Id.*

### B. Review of Non-movant's Evidence at Summary Judgment Stage

■ When challenged by a motion for summary judgment, the allegations of a complaint must be fleshed out by facts provided by admissible evidence:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Plaintiff's argument that "one need merely to read the complaint" to see that he has stated a valid punitive damage claim is directly contrary to law.[3] *Samuels v. Wilder*, 871 F.2d 1346 (7th Cir.1989). Attested facts submitted by the non-moving party must be accepted by the Court as true. Those facts, and other facts that may reasonably be inferred from them, *must* be sufficient to establish the existence of every essential element of the challenged claim. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, a Plaintiff cannot hope to develop essential facts later or at trial—the submissions alone must contain or lead to facts that are inconsistent with negligence and consistent with obduracy or iniquity.

### C. Analysis of Plaintiff's Evidence on Punitive Damages Using Summary Judgment Standard

Plaintiff has submitted evidence from which a reasonable person could draw an inference of negligent conduct toward the Plaintiff. However, Plaintiff apparently misunderstands the purpose of punitive damages and the *type* of evidence required to find that punitive damages are warranted in a particular case. All of Plaintiff's evidence establishes *what* happened; none of it establishes or even reasonably infers what the Defendants intended or thought. Plaintiff mistakenly appears to believe that punitive damages may be supported by amassing evidence of numerous negligent acts. While evidence that Defendants violated certain laws may constitute negligence per se, violations of the law are not per se grounds for punitive damages. The command of Indiana law and Rule 56 is plain: Plaintiff's submissions must contain clear and convincing evidence of the Defendants' states of mind, not of the negligent conduct. *Dow Chemical*, 553 N.E.2d at 151.

■ Even if this Court allowed that a reasonable juror could find as a fact every factual assertion made by the Plaintiff, Plaintiff's punitive damage claim would be supported by nothing other than the rhetorical allegation in the Complaint. Even assuming that Plaintiff's submissions established that Defendants:

1) Failed to obtain permits or any other licensing;

2) Negligently failed to perform maintenance;

3) Negligently drove in improper highway lane—and negligently violated every other statute or ordinance Plaintiff alleged;

4) Negligently failed to restart vehicle because driver error or company training;

---

**3.** In arguing against summary judgment, Plaintiff quoted directly from the Complaint and stated that "[s]uch language should be more than sufficient to meet the [summary judgment] test required by our present legal authorities." (Pl.'s Mem. Opp'n Summ. J. at 10.)

5) Negligently failed to move Layne's trailer off of roadway after it failed to start;

6) Negligently failed to employ any external means to warn on-coming traffic (e.g. flagperson, flashers, flares, air raid sirens, streamers, emergency reflective triangles, etc.); and

7) Negligently failed to maintain, supervise and repair emergency reflective triangles (that never existed in the first place),

these facts and claims, in part or in whole, are entirely consistent with errors of judgment or human failings. Merely creating a dangerous situation does not support a further inference that the conduct was wanton or morally blameworthy.

Some may mistakenly argue at this point that "a jury may find that the Defendants were so negligent that punitive damages are warranted." Of course, summary judgment (and other procedural safeguards) is intended to remove merit-less claims and prevent the finder of fact from engaging in flights of fancy, speculation, or conjecture about facts that reasonably cannot be supported by the evidence. Because Plaintiff has presented no evidence about the Defendants' states of mind, the issue before the Court is the "range of rational inferences" that may be drawn from the facts presented. *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420 (7th Cir.1990); *Corrugated Paper Prod., Inc. v. Longview Fibre Co.*, 868 F.2d 908 (7th Cir.1989); *see Peru Daily Tribune v. Shuler*, 544 N.E.2d 560, 563–64 (Ind.Ct. App.1989).

The range of rational inferences ends where speculation begins; this line is not often clear. *Rakovich v. Wade*, 850 F.2d 1180, 1191 (7th Cir.1988) (en banc). While the Court must view the evidence in the light most favorable to the non-movant, it cannot speculate about unsupported facts. *Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 484 (7th Cir.1991) (inferences must be "plausible"); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir.1985); *Federal Deposit Ins. Corp. v. Lauterbach*, 626 F.2d 1327, 1337 (7th Cir.1980). A finding of

obduracy on the facts in this case would be unmitigated speculation. Such a finding would be precisely the kind of speculation rejected by the Indiana Court of Appeals in a decision affirming a summary judgment that punitive damages were unwarranted. *American Family Ins. v. Blake*, 439 N.E.2d 1170, 1175 (Ind.Ct.App.1982) (no evidence supporting inference of insurer's bad faith). *See also Boddy v. Dean*, 821 F.2d 346, 348 (6th Cir.1987) (with no evidence, trial court properly refused to speculate about person's influence in employment decision); *Fineman v. Armstrong World Indus., Inc.*, 774 F.Supp. 225, 248 (D.N.J.1981) (inference of malice based upon speculation because unsupported by any evidence); *Hagen v. Richardson–Merrell, Inc.*, 697 F.Supp. 334, 340 (N.D.Ill. 1988) (failure of evidence requires pure speculation about defendant's intent in continued marketing of product).

Indiana law *requires* that the Plaintiff produce evidence *"inconsistent* with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." Evidence that merely creates "conflicting inferences" is not sufficient; a plaintiff must produce "additional" or "further" evidence that is in itself inconsistent with negligence. *Bud Wolf*, 519 N.E.2d at 137; *Orkin*, 486 N.E.2d at 1023; *Travelers*, 442 N.E.2d at 362; *Erie Ins. Co.*, 580 N.E.2d at 322–24 (providing an instructive review of current law). Plaintiff's evidence in this case is entirely consistent with the hypothesis that the Home Run and the drivers made errors in judgment. It would be irrational to infer an obdurate or iniquitous state of mind from the facts alleged.

To the extent that one might reasonably infer that the drivers consciously and heedlessly disregarded the danger to other drivers, one could not reasonably infer such facts sufficient to meet a clear and convincing evidence standard. Plaintiff's evidence would allow a jury rampant speculation about an issue that must be proved by clear and convincing evidence. *See Maheu*

*v. Hughes Tool Co.*, 569 F.2d 459, 476 (9th Cir.1978). The Indiana Supreme Court wisely used careful language to guard against cases just like this, where a plaintiff tries to squeeze punitive damages out of facts that are sufficient to show negligence only. *See Travelers*, 442 N.E.2d at 362–63.

## III. CONCLUSION

Plaintiff has failed to produce sufficient evidence from which a rational trier of fact could impose punitive damages against Defendant Home Run. Therefore, Defendants' Motion for Partial Summary Judgment is GRANTED and a Judgment entered contemporaneously with this Entry will declare that Plaintiff take nothing on his claim for punitive damages in this matter.

On March 22, 1991 this Court Ordered Defendants to show cause why their "third defense," which was a constitutional challenge to the punitive damage claim, should not be stricken. That collateral dispute is rendered moot by this summary judgment.