Virginia M. AUSTIN and Terry M. Austin, Plaintiffs,

v.

DISNEY TIRE CO., INC. and Joseph M. Campbell, Defendants.

No. IP 91–829–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 19, 1993.

**286**

Jon L. Williams, Indianapolis, IN, for plaintiffs.

Donald Dawson, John K. Baird, Kightlinger & Gray, Indianapolis, IN, for defendants.

ENTRY GRANTING DEFENDANT CAMPBELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF PUNITIVE DAMAGES

TINDER, District Judge.

Plaintiffs allege that Defendant Campbell is liable for the injuries they suffered when Campbell's truck struck Virginia Austin's automobile. Plaintiffs allege that Campbell's conduct in driving through a red light created an unreasonable risk of injury and that the Indiana common law tort of negligence provides them money damages to compensate them for all damages proximately caused by Campbell's alleged negligence. In addition to their claim for full compensatory damages, Plaintiffs have selflessly accepted the role of private attorney general and are seeking punitive damages against Campbell to serve the public interest. Campbell filed a Motion for Partial Summary Judgment, which asks this court to find that the evidence in the Record does not support findings necessary to impose punitive damages. The court finds that the evidence in the Record, including all reasonable inferences from that evidence, does not allow a jury to impose punitive damages against Campbell.

## BACKGROUND

On September 18, 1989, Defendant Campbell drove a delivery truck northbound in the right-hand lane of North Meridian Street, which is a four-lane divided highway. Campbell's truck was half-filled with automobile tires. Campbell approached the intersection of Meridian and 116th Street, where an automatic traffic signal controls the intersection. Campbell stated in his deposition that he approached the intersection at fifty miles per hour; the posted speed was fifty-five miles per hour. Campbell stated that the traffic signal was green as he approached it. He then glanced down at paperwork in his truck. When he looked up again, the light had changed to yellow and he began to apply his brakes and sound his horn because he felt he was too close to the intersection to stop before entering it. Campbell stated that he never saw the traffic light turn to red. He saw Plaintiff Austin's vehicle, which had begun moving westbound on 116th Street and was across the northbound lanes of Meridian. Campbell stated that he attempted to pull over to the left-hand lane; but, he was unable to avoid colliding with the Plaintiff's vehicle.

Plaintiff submitted several affidavits from individuals who either witnessed the accident; Plaintiff submitted additional affidavits from persons who worked for the local police department in connection with the accident. Plaintiff argues that the affidavits raise genuine issues of fact whether Campbell crossed the white stop line after the light changed to red, whether Campbell honked his horn throughout the intersection, whether Campbell applied his brakes when approaching the intersection, and whether Campbell drove at an excessive rate of speed.

Viewing all of the evidence submitted in this matter, including the affidavit statements Campbell moves the court to strike, the court finds that a reasonable jury could find *at most* that Campbell was negligent as he approached the intersection, was surprised by a yellow light, and then proceeded into the intersection without applying his brakes or sounding his horn.[1]

---

1. The inference that Campbell failed to apply his brakes or sound his hour is very likely speculative rather than reasonable. As Campbell's Motion to Strike correctly notes, this inference is dependent upon statements from witnesses who say merely that *they* "did not see" Campbell

## DISCUSSION

### I. STANDARD OF CONDUCT REQUIRED TO IMPOSE PUNITIVE DAMAGES ARISING FROM CONDUCT CONNECTED TO A NEGLIGENCE ACTION

A New Year's Eve decision by the Supreme Court of Indiana provided yet another refinement to the elusive standard for imposing punitive damages against a defendant. *Erie Ins. Co. v. Hickman,* 605 N.E.2d 161 (Ind.1992). Citing *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135 (Ind.1988), the Court reaffirmed that a plaintiff must prove the facts supporting a punitive damage claim by "clear and convincing evidence." *Erie,* 605 N.E.2d at 162. Rejecting the lower court's use of "repudiated dicta" from *Orkin Exterminating Co. v. Traina,* 486 N.E.2d 1019, 1024 (Ind.1986), the *Erie* decision stated that a defendant is not cloaked with a presumption of non-culpability and that a plaintiff need not exclude every reasonable hypothesis of innocent conduct. *Erie,* 605 N.E.2d at 162 (citing *Bud Wolf,* 519 N.E.2d at 137).[2] Operating within the framework of Indiana's emerging principles of punitive damages, this court must determine whether Campbell's conduct regarding the incident of September 18, 1990 can reasonably support Plaintiffs' demand for punitive damages against Campbell.

Even though punitive damages seem to be directed toward one type of mental state—obduracy[3]—there appear to be two different formulations of the standard of conduct required for punitive damages. Indiana courts have (relatively) consistently used one litany to describe such conduct in connection with a breach of contract claim and another litany to describe such conduct in connection with a negligence claim. In a contract action, punitive damages are appropriate only upon clear and convincing evidence showing that the defendant "acted with malice, fraud, gross negligence or oppressiveness" and that such conduct "was not the result of a mistake of fact or law, honest error o[f] judgment, overzealousness, mere negligence, or human failing." *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 982–83, (Ind.1993); *Erie,* 605 N.E.2d at 162; *Lawyers Title Ins. Corp. v. Pokraka,* 595 N.E.2d 244, 249 (Ind.1992); *Bud Wolf,* 519 N.E.2d at 137. The Supreme Court of Indiana has recently held that the Plaintiff must demonstrate an independent tort embodying this standard before punitive damages will be imposed in a breach of contract action. *Miller Brewing,* 1993 WL 30974, at *9, 608 N.E.2d at 983–84.

The standard of conduct in a negligence action, which is the standard applicable to this matter, is less well developed. It is plain that "mere" negligence will not support an award of punitive damages; merely failing to act as a reasonable person would have does not constitute the type of conduct punishable by punitive damages. *Traina,* 486 N.E.2d at 1023; *Lazarus Dep't Store v. Sutherlin,* 544 N.E.2d 513, 521 (Ind.Ct.App.1989) (trans. denied); *Miller Pipeline Corp. v. Broeker,* 460 N.E.2d 177, 179 (Ind.Ct.App. 1984); *Prudential Ins. Co. of Am. v. Executive Estates, Inc.,* 174 Ind.App. 674, 369 N.E.2d 1117, 1130 (1977). In *Bud Wolf,* the Court cited *Traina* as providing the appropriate standard for negligence and intentional tort actions: There must be clear and convincing evidence that the defendant "subjected other persons to probable injury, with an awareness of such impending danger and

---

brake and "did not hear" his horn. This kind of negative evidence is insufficient to create a genuine issue of fact (*Posey v. Skyline Corp.,* 702 F.2d 102, 106 (7th Cir.1983)) and further is expressly rebutted by witnesses who heard Campbell's horn and saw his tire skid marks. This evidentiary debate is irrelevant, however, because the "facts" of failing to brake or honk are not material to the outcome of Campbell's Motion.

Accordingly, Campbell's Motion to Strike is DENIED AS MOOT because the challenged affidavit statements do not affect the court's ruling on the Campbell's Motion for Summary Judgment.

2. Defendant's briefs, filed prior to the Court's decision in *Erie,* asserted some of the "repudiated" principles stated in the *Traina* case.

3. One who is obdurate is hardened in feelings, especially against moral or mollifying influences, one who is stubbornly persistent in wrongdoing and resistant to persuasion or softening influences. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1555 (1986).

with heedless indifference of the consequences." 519 N.E.2d at 136.

 Punitive damages may be awarded on a showing of willful and wanton misconduct, which need not embody malice, ill will or intent to injure. *Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1221 (Ind.1988) (citing *Traina*, 486 N.E.2d at 1023). Indiana law has drawn a sharp distinction between willful conduct and negligent conduct. Negligence is judged by the actor's conduct and is dependent upon an error of judgment; whether willfulness is present requires an analysis of the actor's state of mind, which seeks to determine the actor's intent in acting. *Cleveland, C., C. & St. L. Ry. Co. v. Miller*, 149 Ind. 490, 49 N.E. 445 (1898); *Koop v. Bailey*, 502 N.E.2d 116 (Ind.Ct.App.1986). Indiana law does not recognize degrees of negligence for the purposes of assessing an individual's liability regarding a negligence action in tort. *Heiny v. Pennsylvania R.R. Co.*, 221 Ind. 367, 47 N.E.2d 145 (1943). Recklessness seems to be a hybrid concept that views the subjective mental state of "disregarding" by the objective standard of what facts a reasonable person would have been aware. *Simpson v. Broglin*, 612 F.Supp. 1162 (N.D.Ind.1985).

 Whether arising in an action in contract or tort, the purpose of punitive damages is to identify and deter conduct that is driven by a mental state of obduracy. *Bud Wolf*, 519 N.E.2d at 137. The Supreme Court stated in *Picadilly* that

the perverseness that public policy will permit the courts to punish is *conscious and intentional misconduct* which, under the existing conditions, the actor knows will probably result in injury. As examples of such misconduct, our decision in *Traina* recognized the following: conscious indifference, heedless indifference, reckless disregard for the safety of others, reprehensible conduct, and heedless disregard of the consequences.

519 N.E.2d at 1221 (internal quotes omitted) (emphasis added). Given these statements, given the fact that punitive damages seek to punish a mental state and not an error in judgment, and given that Indiana does not recognize degrees of negligence, the court

finds that punitive damages require clear and convincing evidence establishing a subjective mental state of obduracy. While reference to what a reasonable person would have perceived may aid in this determination (*see Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 360 (Ind.1982)), punitive damages may not be awarded on the finding that a defendant acted "very" negligently—because negligence is an objective determination. There must be sufficient direct or circumstantial evidence of the malfeasor's state of mind to conclude that the person recognized the danger and *consciously* disregarded it; mere failure to recognize a dangerous situation or non-iniquitously failing to exercise proper judgment in such a situation are not sufficient. *See Traina*, 486 N.E.2d at 1023.

This conclusion is unremarkable and is supported by Indiana cases addressing punitive damages in similar contexts. These cases have held in essence that "really negligent behavior," by itself, is not sufficiently reprehensible to allow punitive damages. In *Prudential Ins. Co. v. Executive Estates*, the Indiana Court of Appeals held that a finding only of "heedless or reckless disregard of the consequences" will not support imposition of punitive damages. 369 N.E.2d at 1131. The court stated that the phrase had been used "as an alternative to the description of more oppressive conduct" such as "conscious or intentional wrongdoing better described by such words as oppression or malice." *Id.* The court noted further:

In two cases in which the court spoke *only* of a heedless disregard of consequences, a more conscious and direct type of behavior was nevertheless included. The wrongdoer in *Tru Temper Corp. v. Moore* (1973), 157 Ind.App. 142, 299 N.E.2d 844, bought and cut standing timber from a seller known not to own the land. The wrongdoer's conduct in *Jones v. Hernandez* (1970), 148 Ind.App. 17, 263 N.E.2d 759, was just as direct and conscious ... charging an electric fence with 110 volts to keep neighboring farm laborers away.

*Id.* In summary, the court concluded that it seems reasonable to conclude that something more than a state of mind described

as heedless disregard of the consequences is required to justify imposition of punitive damages. The cases seem to have dealt with a state of mind demonstrating actual malice or a wantonness from which the law could imply malice. None in Indiana have yet gone so far as to support or award punitive damages solely on the basis of a concept of heedless disregard of the consequences, which might also be described as constructive malice. .

*Id.*

A more recent Court of Appeals decision, cited favorably by the Supreme Court in *Traina,* 486 N.E.2d at 1020, dealt directly with punitive damages in a cause of action stated in negligence arising from an auto collision. *Miller Pipeline Corp. v. Broeker,* 460 N.E.2d 177 (Ind.Ct.App.), *reh'g den.,* 464 N.E.2d 12 (Ind.Ct.App.1984).[4] The court held that conduct in "heedless disregard of the consequences" does not necessarily justify punitive damages; that kind of conduct—which may be gauged by an objective standard—does not necessarily indicate a sufficiently reprehensible (subjective) mental state. 460 N.E.2d at 185. The court found that something more—the state of mind of malice, oppressiveness, obduracy, or iniquity—is required. *Id.* Note that to the extent that the decision in *Bud Wolf* applies to punitive damages arising in an action stated in negligence, that decision held that a finding of "malice" was not required for such damages. 519 N.E.2d at 137.[5]

The upshot of these Indiana cases is that punitive damages seek to punish and there-fore deter obdurate, iniquitous, reprehensible conduct. In non-contractual situations, this kind of conduct is identified by a conscious decision to engage in a course of conduct notwithstanding the awareness that it will very probably expose others to impending danger. The summary judgment issue in this matter may be stated as follows: Does the evidence before the court, including all reasonable inferences from it, support a finding that there is clear and convincing evidence that Campbell's conduct prior to the collision was the product of a mental state characterized by iniquity and obduracy?

## II. APPLICATION OF PUNITIVE DAMAGES LAW TO THE EVIDENCE

█ The evidence regarding Campbell's conduct raises the inference that he committed a serious error of judgment and breached his common law duty to operate his vehicle in a reasonably safe manner. However, even after taking all inferences from the evidence in favor of the Plaintiffs, the court finds that it would be unreasonable to conclude that there is clear and convincing evidence that Campbell acted with a mental state necessary to impose punitive damages upon him.

There is no evidence that Campbell was joy riding, drag racing, or intentionally running red lights; indeed, there is no evidence that Campbell was even speeding immediately prior to the accident. If the evidence were to raise the reasonable inference that Campbell approached a *red* light, saw the cross-traffic, recognized the danger, and yet decided to try to "gun it through" the intersection

---

**4.** The opinion on rehearing noted the subsequent conflicting holding by another district of the Court of Appeals in *Orkin Exterminating Co. v. Traina,* 461 N.E.2d 693 (Ind.Ct.App.1984), and declined to follow that case (which the Supreme Court subsequently vacated in part).

**5.** The court has located no decision in which an Indiana court used the phrase "gross negligence" as descriptive of the kind of conduct sufficient in itself to allow punitive damages *in a negligence action.* That phrase can be found in the litany used to describe sufficiently reprehensible conduct in breach of contract cases only. However, should Plaintiffs wish to give "gross negligence" the meaning of "very negligent" and contend that such conduct is sufficient for punitive damages in a negligence action, the court would reject that position as unsound. The term

"gross negligence," correctly understood and applied in this context, denotes conduct identical to heedlessly indifferent conduct: willful and wanton misconduct, consciously disregarding an impending danger. *See* BLACK'S LAW DICTIONARY 931 (5th ed. 1979). Indiana Courts have expressly rejected the notion that "mere" gross negligence is sufficient for punitive damages. *Armstrong,* 442 N.E.2d at 360 ("[P]unitive damages should not be awarded on evidence that is merely consistent with the hypothesis of malice, fraud, *gross negligence* or oppressiveness." (emphasis added)); *Executive Estates,* 369 N.E.2d at 1132 ("Gross negligence as such, used in this context, has not been defined, but it is reasonable to assume that it refers to the same kind of oppressive conduct symbolized by fraud or malice.")

for some selfish reason, then this would be a different case. The evidence does not even remotely raise that kind of inference.

Plaintiffs' focus on Campbell's conduct after he realized his predicament. This conduct (braking and honking or failing to do so) may demonstrate a lack of skill as a driver; however, there is no reasonable inference that Campbell did not brake or honk because he wanted to hit the crossing vehicle or did not care whether he hit it or not. Moreover, Plaintiff has submitted no evidence to establish clearly and convincingly that Campbell approached the intersection with the knowledge that he might just run a red light and a conscious disregard for the impending danger that conduct might generate.

In sum, the evidence demonstrates a occasion of unreasonably dangerous driving (looking down when approaching an intersection), but does not suggest that the driver had a reprehensible mental state when making that error of judgment. By definition, every person who creates an unreasonable risk of danger is "at fault" and should not have acted to create such a risk; however, the person "guilty" of negligence is corrected and deterred by requiring that person to pay compensatory damages. Such damages fail to vindicate the public interest if and only if the wrongdoer created and ignored the risk with an obdurate state of mind. Based on the evidence in the record, Campbell plainly did not engage in the kind of behavior and thinking that current Indiana law would seek to "punish" with exemplary damages.

## CONCLUSION

Accordingly, Defendant Campbell's Motion for Partial Summary Judgment on the issue of punitive damages is GRANTED. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the court will enter a judgment against the Plaintiffs on this issue at the close of all issues in this matter. Plaintiffs' claim for compensatory damages will be tried to a jury.