Dennis WAUCHOP, Administrator of the Estate of Susan Wauchop, Deceased, and as Guardian of the minors Brian Noonan, Jason Noonan, Patrick Noonan, and John Noonan, Plaintiffs,

Janet Scott, as mother and natural guardian of the minor Timothy Scott, Intervenor Plaintiff,

v.

DOMINO'S PIZZA, INC., Thomas S. Monaghan, Scott Halvorsen, d/b/a Domino's Pizza, and Christopher Braden, Defendants.

No. S90–496M.

United States District Court, N.D. Indiana, South Bend Division.

April 22, 1993.

**1578**

Robert J. Pavich, Chicago, IL, for Wauchop/Noonan.

Loren B. Siegel, Chicago, IL, for intervenor plaintiff Scott.

C. Roy Peterson, Nancy Shaw, Chicago, IL, Thomas J. Brunner, Jr., Paul J. Peralta, South Bend, IN, for Domino's Pizza, Inc. and Thomas Monaghan.

Arthur A. May, Joe Jensen, South Bend, IN, for Scott Halvorsen.

John McQuillan, Terri Springman, Merrillville, IN, for Christopher Braden.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion of defendant Domino's Pizza, Inc. for summary judgment as to Count XI of the plaintiffs' complaint, which seeks punitive damages.[1] Count XI alleges that, "For years prior to May 25, 1990, ... Domino's willfully and wantonly maintained THE 30 MINUTE RULE [2] although [it] knew or should have known that [the 30-minute guarantee] resulted and would likely continue to result in motor vehicle accidents causing death and serious injuries." Also before the court are Domino's motion to strike the plaintiffs' exhibits filed in opposition to Domino's motion for summary judgment, and the plaintiffs' request for oral argument. Because the court finds that it can adequately address Domino's summary judgment motion without resort to the plaintiffs' exhibits, Domino's motion to strike the exhibits will be denied as moot. The court does not believe that oral argument would be of assistance, and therefore denies the plaintiffs' motion.

The court assumes familiarity with the facts and with Domino's 30–minute guarantee. *See* February 18, 1993 Memorandum and Order, 832 F.Supp. 1572. For the reasons that follow, the court finds that Domino's motion for summary judgment as to Count XI must be denied.

### I.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the nonmoving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the nonmoving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates,* 803 F.Supp. 1388, 1392–93 (N.D.Ind.1992) (citations omitted).

### II.

█ Indiana courts have used one test to describe the standard of conduct required for

---

1. This motion originally was brought by Domino's and Thomas Monaghan. Because the court granted Mr. Monaghan's motion for summary judgment on February 18, the court treats this motion solely with respect to Domino's.

2. For purposes of consistency, the court will hereinafter refer to Domino's thirty minute delivery policy as the "30–minute guarantee".

punitive damages in connection with a breach of contract, and another to describe such conduct in negligence cases. *Austin v. Disney Tire Co., Inc.*, 815 F.Supp. 285, 287 (S.D.Ind.1993). To recover punitive damages for breach of contract, the plaintiff must show, by clear and convincing evidence, that the defendant acted with malice, fraud, gross negligence, or oppressiveness, and that the defendant's actions were "inconsistent with the hypothesis that the tortious conduct was a result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other non-iniquitous human failing." *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind.1988); *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1023 (Ind.1986); *W & W Equipment Co., Inc. v. Mink*, 568 N.E.2d 564, 577 (Ind.Ct.App.1991), *trans. denied; see also Austin v. Disney Tire Co.*, 815 F.Supp. at 287. Moreover, the Indiana Supreme Court recently held that to recover punitive damages for breach of contract, the "plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded." *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind.1993).

■ In actions arising under tort, mere negligence will not support an award of punitive damages; failing to act as a reasonable person would have acted does not constitute the type of conduct punishable by punitive damages. *Austin v. Disney Tire Co.*, 815 F.Supp. at 288; *Orkin Exterminating Co. v. Traina*, 486 N.E.2d at 1023; *Lazarus Dept. Store v. Sutherlin*, 544 N.E.2d 513, 527 (Ind. Ct.App.1989), *trans. denied; see also Samuel v. Home Run, Inc.*, 784 F.Supp. 548, 550 (S.D.Ind.1992). Rather, punitive damages may be awarded only upon a showing by clear and convincing evidence that the defendant "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Bud Wolf Chevrolet v. Robertson*, 519 N.E.2d at 136 (quoting *Orkin Exterminating Co. v. Traina*, 486 N.E.2d at 1023); *see also Austin v. Disney Tire Co.*, 815 F.Supp. at 287; *Spangler v. Sears, Roebuck and Co.*, 752 F.Supp. 1437, 1446

(S.D.Ind.1990). Punitive damages may be awarded upon a showing of Domino's willful and wanton misconduct, even absent malice, ill will, or intent to injure. *Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1221 (Ind.1988) (citing *Orkin Exterminating Co. v. Traina*, 486 N.E.2d at 1023); *Austin v. Disney Tire Co.*, 815 F.Supp. at 288.

The Indiana Supreme Court has stated:

[T]he perverseness that public policy will permit the courts to punish is conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury.

As examples of such misconduct, our decision in [*Orkin Exterminating Co. v.*] *Traina* [486 N.E.2d at 1023] recognized the following: conscious indifference, heedless indifference, reckless disregard for the safety of others, reprehensible conduct, and heedless disregard of the consequences.

*Picadilly, Inc. v. Colvin*, 519 N.E.2d at 1221 (citing *Orkin Exterminating Co. v. Traina*, 486 N.E.2d at 1023); *see also Austin v. Disney Tire Co.*, 815 F.Supp. at 288.

■ Both the plaintiffs and Domino's agree that the award of punitive damages turns upon Domino's state of mind: whether Domino's knew of, but consciously disregarded, the danger of the 30–minute guarantee. *See Dow Chemical v. St. Vincent Hospital and Health Care Center, Inc.*, 553 N.E.2d 144, 150–51 (Ind.Ct.App.1990) ("the ultimate determination is controlled by the malfeasor's state of mind, and punitive damages may be awarded upon a showing of wilful and wanton misconduct"); *Rose Acre Farms, Inc. v. Cone*, 492 N.E.2d 61, 70 (Ind.Ct.App.1986), *trans. denied* (same); *Samuel v. Home Run, Inc.*, 784 F.Supp. at 550 ("Indiana requires that punitive damages be supported by 'clear and convincing evidence' of the malfeasor's state of mind"); *see also Austin v. Disney Tire Co.*, 815 F.Supp. at 288 ("whether wilfulness is present requires an analysis of the actor's state of mind").

■ State of mind, however, is a fact to be inferred from the surrounding circumstances, *Arave v. Creech*, —— U.S. ——, —— – ——,

113 S.Ct. 1534, 1541–42, 123 L.Ed.2d 188 (1993), and caution should be employed before granting summary judgment:

> Knowledge on the part of [a] company can be proved only by showing the state of mind of its employees. The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends upon the credibility of witnesses testifying as to their own states of mind. In these circumstances, the jury should be given the opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.

10A C. Wright and A. Miller, *Federal Practice and Procedure* § 2730 (2nd ed. 1983) (citing *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir.1970)).

The Seventh Circuit has provided that "where the defendant's motive or state of mind is an essential element of a plaintiff's case, a court must be circumspect in granting summary judgment based solely on the defendant's categorical denial that the requisite mental state existed." *Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.1989); *see also Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (when the issue is one of intent, special caution should be used in applying summary judgment principles); *Forsythe v. Polsky*, No. 90 C 7302, 1993 WL 69600 (N.D.Ill. March 11, 1993) (court should not grant summary judgment on the issue of a party's mental state if the non-movant can present circumstantial evidence to support its position on the issue). It is also well-settled, however, that a movant is entitled to summary judgment if the burden is on the non-movant to establish the state of mind, and the non-movant fails to present even circumstantial evidence from which a jury could infer the requisite state of mind. *Corrugated Paper Products v. Longview Fibre Co.*, 868 F.2d at 914; *see also Arndt v. Wheelabrator Corp.*, 763 F.Supp. 396, 401 (N.D.Ind.1991) ("Even on issue of intent, summary judgment is proper if the party with the burden at trial presents no indication of the necessary motive or intent.").

At bottom, the question of punitive damages ordinarily is for the jury to decide. *Whitten v. Kentucky Fried Chicken Corp.*, 570 N.E.2d 1353, 1358 (Ind.Ct.App.1991), *trans. denied; Southern School Buildings, Inc. v. Loew Electric, Inc.*, 407 N.E.2d 240, 253 (Ind.Ct.App.1980).

### III.

To prevail, Domino's must demonstrate that there is no genuine issue of material fact as to Domino's state of mind, and that no reasonable jury could conclude that Domino's knew of the danger of the 30–minute guarantee, yet consciously disregarded it. The plaintiffs have presented the following evidence, as well as reasonable inferences therefrom, to establish that Domino's had knowledge of the danger of the 30–minute guarantee, but consciously disregarded such danger.

Domino's employees testified that they knew that some franchisees and employees within the company believed that the 30–minute guarantee was a safety hazard (Stachurski Dep., p. 104; Popevich Dep., p. 37; Black Dep., pp. 90–91). Domino's acknowledged that it received information from outside concerns that the 30–minute guarantee was hazardous (Stachurski Dep., p. 52). Domino's was aware of media criticism concerning the safety of the 30–minute guarantee, including essays by a Seattle news station, and national programs such as *Inside Edition* and *Good Morning America* (Black Dep., pp. 52, 83–84; Monaghan Dep., pp. 57–58). There is evidence that Domino's believed that insurance underwriters regarded the 30–minute guarantee as unsafe and a cause for claims (Chevalier Dep., p. 56–58). As a result, many franchisees had difficulty in obtaining insurance (Napolitano Dep., p. 19).

The 30–minute guarantee requires the franchisee, not Domino's Pizza, Inc., to refund $3.00 off the price for each order not delivered within thirty minutes. The approximate profit on each pizza is between $.80 and $2.00 (Stachurski Dep., pp. 199–208). Domino's Divisional Vice–President of Finance testified that he favored elimination of

the 30–minute guarantee for corporate stores because it was an economic detriment (Carr Dep., p. 44). This raises an inference that there may be financial consequences for the franchisee if it fails to deliver a pizza within the thirty minute deadline.

The 30–minute guarantee is premised upon Domino's ability to make the pizzas in approximately ten minutes, and to restrict the geographic area in which the franchisee or corporate store delivers its pizzas (Stachurski Dep., pp. 104–06). However, there is some testimony that Domino's never measured the time that it would take to complete the orders, never measured delivery times, never determined the percentage of deliveries that involved two or more separate orders at separate addresses, and never determined the percentage of deliveries that were more than two miles from the store (Black Dep., pp. 59–61).

Domino's offered to sell driver training materials to the franchisees, but did not require the franchisees to purchase such materials, and never confirmed whether its franchisees instituted safe driving programs. (Stachurski Dep., pp. 39, 47; Black Dep., pp. 64–65). In the April 14, 1989 edition of Domino's weekly newsletter, Thomas Monaghan stated, "Every pizza should be a matter of life and death to make the delivery in 30 minutes or less. When the rush comes—Hustle."

Domino's never gathered any information to determine the number of accidents or claims involving Domino's drivers (Popevich Dep., p. 48; Chevalier Dep., p. 60). Although Domino's maintained a toll free telephone number to register complaints about late service and the quality of the product, Domino's did not register complaints about reckless driving (Stachurski Dep., pp. 90–97). Domino's never implemented any quality control risk management principles with respect to delivery drivers (Stachurski Dep., pp. 169), nor undertook safety studies (Raymond Dep., p. 48). Domino's has never statistically analyzed accidents in response to the negative publicity it received, or in relation to driver safety (Black Dep., p. 63; Stachurski Dep., p. 100). The reason that Domino's did not analyze such accidents was be-cause the 30–minute guarantee was a primarily a marketing program, and the magnitude of such a tabulation was outside the scope of Domino's budget and manpower (Stachurski Dep., pp. 100–01).

Notwithstanding concern generated about the hazards of the 30–minute guarantee, there is evidence that no discussion regarding the safety of the 30–minute guarantee ever occurred in an "official corporate format" (Stachurski Dep., p. 104). No person on Domino's board of directors or executive team expressed any concern about the 30–minute guarantee policy being a safety hazard (Black Dep., pp. 43, 67). Although Domino's "management people in the field" debated the safety of the 30–minute guarantee, no person higher up in the corporate hierarchy did so (Stachurski Dep., pp. 102–104).

After reviewing the facts recited above, as well as all reasonable inferences that may be drawn therefrom, the court finds that the plaintiffs have presented evidence from which a jury could find that Domino's had knowledge of the danger of the 30–minute guarantee, but consciously disregarded such danger.

## IV.

■ Domino's argument that summary judgment is proper requires the court to weigh evidence and determine the credibility of witnesses, a role the court cannot undertake in deciding a motion for summary judgment. *See Reed v. Ford Motor Co.*, 679 F.Supp. 873, 877 (S.D.Ind.1988) (at summary judgment, "the court cannot weigh the evidence or make other determinations of credibility"). Rather, the court must construe the facts as favorably to the plaintiffs as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. *Conery v. Bath Associates*, 803 F.Supp. at 1393.

Instructive on this issue is *Reed v. Ford Motor Co.*, 679 F.Supp. 873 (S.D.Ind.1988), where the plaintiff sued the defendant in tort because the plaintiff's car inadvertently jumped into reverse. To support its motion for summary judgment on the punitive dam-

ages issue, Ford introduced deposition testimony of two employees who had investigated and explored the problem of remedying the inadvertent rearward movement with certain Ford transmissions. The court denied Ford's motion, stating in part:

> The major portion of Ford's reply is devoted to a review of the plaintiff's evidence. Ford offers, for much of that evidence, a "noniniquitous" or otherwise innocent hypothesis that a reasonable juror could draw from its conduct. The flaw in this argument for summary judgment purposes is that a conclusion by the court that a reasonable juror could find the positive (that Ford's conduct was innocent) is not the same as a conclusion by the court that a reasonable juror could *not* find the *negative* (that there is no innocent hypothesis reasonably to be drawn from Ford's conduct). The plaintiff's evidence should be viewed only in light of the latter question.

*Reed v. Ford Motor Co.*, 679 F.Supp. at 877 (emphasis in original).

Likewise, Domino's presents evidence of a number of "non-iniquitous" or otherwise innocent hypotheses from which a reasonable juror could conclude that Domino's conduct was not deserving of punitive damages. For example, Domino's contends that none of its employees whose depositions were taken regarded the 30-minute guarantee as dangerous; thus, Domino's maintains, there is no question of fact as to their state of mind. Domino's evidence does support an inference that it did not possess the requisite state of mind. However, there is also evidence that some of these same individuals, including the president of Domino's, had knowledge of concerns related to the safety of the 30-minute guarantee, yet did nothing to investigate or explore those concerns. Given that reasonable inferences can be raised supporting both Domino's and the plaintiffs' positions, summary judgement is inappropriate. The jury must be given the opportunity to observe the demeanor of the witnesses whose states of mind are at issue. 10A C. Wright and A. Miller, *Federal Practice and Procedure* § 2730 (2nd ed. 1983) (citing *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir.1970)); *see also Corrugated Paper Prod-*

*ucts v. Longview Fibre Co.*, 868 F.2d at 914 ("a court must be circumspect in granting summary judgment based solely on the defendant's categorical denial that the requisite mental state existed").

Domino's also contends that it made a substantial effort to increase driver safety by initiating a safe delivery program for training drivers, a program in effect on May 25, 1990. However, there is also evidence that Domino's did not require the franchisees to purchase driver training materials, and never confirmed whether its franchisees instituted safe driving programs. (Stachurski Dep., pp. 39, 47; Black Dep., pp. 64–65). Resolution of this conflicting evidence, and the inferences therefrom, is the jury's domain, not the court's.

Domino's claims that its "rack time" policy—whereby a pizza still in the store twenty-five minutes after the order was placed was automatically marked late—relieved pressure on the drivers to deliver within thirty minutes. While this may be true, a converse inference may be drawn that a pizza still on the rack twenty-four minutes after the order had to be rushed to the customer within six minutes, or the franchisee would lose money.

Domino's contends that Mr. Monaghan's statement that "[e]very pizza should be a matter of life or death to make the delivery in 30 minutes or less", was clearly a figure of speech. However, whether the statement was a figure of speech, or whether there is an inference that Mr. Monaghan's statement was Domino's unwritten policy is a question for the jury to decide.

Domino's also contends that Scott Halverson, the independent franchisee who hired Christopher Braden, repeatedly told the drivers to drive safely, and the drivers at Mr. Halverson's store were not penalized for late deliveries. Count XI, however, does not seek punitive damages against Mr. Halverson or Mr. Braden, but is directed solely at Domino's for its willful and wanton maintenance of the 30-minute guarantee although Domino's knew or should have known that the 30-minute guarantee resulted and would continue to result in accidents causing death and serious injuries. Thus, the implementation of the 30-minute guarantee by Mr. Halver-

son and Mr. Braden is not dispositive of Count XI.

To support its position, Domino's cites *Samuel v. Home Run, Inc.*, 784 F.Supp. 548, where the court granted the defendants' motion for summary judgment as to punitive damages. The court based its decision upon the plaintiff's failure to present any evidence about the defendants' states of mind. 784 F.Supp. at 552. Without such evidence, the court could only "speculate about unsupported facts." 784 F.Supp. at 552. Here, the plaintiffs have presented, at a minimum, circumstantial evidence that Domino's had knowledge from a number of sources concerning the hazards of the 30–minute guarantee, yet showed conscious indifference for such concerns or reckless disregard for the safety of others.

In sum, this motion involves conflicting evidence, as well as conflicting inferences that may be drawn from that evidence. Much depends upon the credibility of witnesses testifying as to their own states of mind. At this stage of the proceedings, the court cannot conclude "that there is no evidence from which reasonable jurors could find, by a clear and convincing, that punitive damages should be awarded." *Amcast Industrial Corp. v. Detrex Corp.*, 779 F.Supp. 1519, 1545 (N.D.Ind.1991).

## V.

Accordingly, Domino's motion for summary judgment must be, and is hereby, DENIED. Domino's motion to strike the plaintiff's exhibits filed in opposition to Domino's motion for summary judgment is DENIED AS MOOT. The plaintiffs' request for oral argument is DENIED.

SO ORDERED.