Irma WANKE, as Personal Representative of the Estate of Dwight Wanke

v.

LYNN'S TRANSPORTATION COMPANY
and Kwame Marsh.

No. S92–457M.

United States District Court,
N.D. Indiana,
South Bend Division.

June 8, 1993.

Jack P. Cittadine, Elkhart, IN, for plaintiff.

Edward N. Kalamaros, Patrick J. Hinkle, South Bend, IN, for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Several motions *in limine* pend in this tort case, and each party has moved for partial summary judgment. The court will address the motions *in limine* first, then turn to the partial summary judgment motions.

This cause arises from a vehicular collision on May 26, 1992 between a truck driven by defendant Kwame Marsh for defendant Lynn's Transportation and a vehicle driven by the plaintiff's decedent, Dwight Wanke. Mr. Wanke was seriously injured in the collision, and died fifty-five days later. Irma Wanke brings this suit for wrongful death, loss of consortium, and punitive damages. The court's jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and the parties agree that Indiana law controls.

### A. Motions in Limine

The defendants have filed six motions *in limine*, and the plaintiff has filed one.

#### 1. Expert Opinion on Valuation of Loss of Love

█ In their first motion, Lynn's and Mr. Marsh seek to exclude any of the matters set forth in the report of plaintiff's expert Dr. James Bernard under the heading, "Quality of Life—Loss of Love Care & Affection and Its Application to Irma Wanke". The defendants rely on *Southlake Limousine and Coach, Inc. v. Brock*, 578 N.E.2d 677, 682 (1991), in which the Indiana Court of Appeals concluded that, "Expert testimony on the value of life should not have been admissible in this wrongful death case." Mrs. Wanke relies on the perceived liberality of the Federal Rules of Evidence.

█ The court has too little information on which to base a ruling. Mrs. Wanke is correct that Federal Rules of Evidence 702–704 will govern the admissibility of Dr. Bernard's opinion. Among the requirements that must be satisfied for admissibility under Rule 702 are that: (1) the witness is qualified, by reason of training, education, or experience to state the proffered opinion, and (2) the opinion will be helpful to the trier of fact. *United States v. Carr*, 965 F.2d 408, 412 (7th Cir.1992); *United States v. Tipton*, 964 F.2d 650, 654 (7th Cir.1992). That Dr. Bernard is an economist does not entitle him to state an opinion on every conceivable issue of economics. *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1113 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992); *see also United States v. Lewis*, 954 F.2d 1386, 1390 (7th Cir.1992) (court must compare witness' area of expertise to topic of testimony). To present the challenged portion of Dr. Bernard's opinion, Mrs. Wanke will have to demonstrate that by reason of Dr. Bernard's training, education, or experience, he is qualified to place an economic value on love and affection, and that this opinion will assist the trier of fact. It appears unlikely that these hurdles can be overcome, *see, e.g., Mercado v. Ahmed*, 974 F.2d 863, 868–871 (7th Cir.1992) (no abuse of discretion in refusing to allow economist to state valuation opinion on hedonic damages), but the defendants have not shown the hurdles to be insurmountable at the *in limine* stage.

Accordingly, the court defers ruling on the defendants' first motion *in limine*. If the report to which the motion refers is one submitted pursuant to Fed.R.Civ.P. 26(b)(4)(A)(i), the court invites its submission to the court in advance of the final pretrial conference.

#### 2. Failure to Take Drug Test

█ The defendants move to exclude evidence of Mr. Marsh's failure to take a drug test within thirty-two hours of the accident, arguing that a scheduled test was cancelled because applicable federal regulations require testing only if a traffic citation was issued. Mrs. Wanke points to a company policy that apparently was in effect at the time of the collision, requiring a driver to undergo a drug test if the accident involved fatality, personal injury, or more than $4,400 in property damage.

Lynn's and Mr. Marsh argue that because there is no other evidence of alcohol or drug intoxication and because the federal regulations did not require the test, the failure to take the test is not probative of any issue in

the case or, alternatively, that the potential for unfair prejudice substantially outweighs any probative value. The court disagrees.

Doubtlessly, the evidence is ambiguous. Based on the evidence outlined in the parties' submissions, the jury could find that the test was cancelled because the defendants believed it to be unnecessary, and not due to any suspicion that the results would be unfavorable. The jury also could find, however, that the defendants' conduct amounted to a passive spoilation, *see, e.g., Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 927 n. 7 (2nd Cir.1981), allowing any suspected evidence of drug or alcohol to pass through Mr. Marsh's system. The defendants essentially argue that this latter inference is unfair because it is untrue; such reasoning is not available under Rules 401 or 403.

The defendants do not contend that Mr. Marsh's sobriety at the time of the collision is not a "fact that is of consequence to the determination of the action", Fed.R.Evid. 401. It appears that one witness thought Mr. Marsh's conduct at the scene was a bit unusual (although Mrs. Wanke will have to go further than she has to date to qualify the witness to state an opinion as to the possibility that Mr. Marsh was on drugs), and the trier of fact could find that Mr. Marsh reported seeing another vehicle unseen by anyone else. The cancellation of the drug test makes the fact of consequence to the action—Mr. Marsh's intoxication at the time of the collision—more probable than it would be without the evidence. That the jury might so infer from the evidence is not unfair prejudice. *United States v. Bentley,* 825 F.2d 1104, 1108 (7th Cir.), *cert. denied,* 484 U.S. 901, 108 S.Ct. 240, 98 L.Ed.2d 198 (1987) ("This was 'prejudicial' to the defendants only because of its probative force. Damning evidence is not inadmissible on that account.").

Accordingly, the court denies the defendants' second motion *in limine.*

### 3. Post–Accident Events

The defendants' third motion seeks to exclude evidence of three occurrences: first, that Mr. Marsh received a speeding ticket in Illinois two days after the May 26 collision in

which Mr. Wanke was killed; second, that Lynn's received a telephonic complaint about Mr. Marsh's "tailgating" two to three weeks after the Wanke collision; and third, that Lynn's discharged Mr. Marsh about four weeks after the Wanke collision. Why these three issues have been grouped in one motion is not immediately apparent; the court will address them separately.

#### a. Speeding Ticket

It appears that two days after the Wanke collision, while Mr. Marsh was returning to Iowa from Indiana, he was ticketed in Illinois for exceeding the speed limit—doing 68 miles per hour in a 55 mile per hour zone. The defendants wish to exclude this evidence.

The plaintiff's principal argument in favor of admissibility is not that Mr. Marsh was ticketed, but rather that he denied having been ticketed: at his deposition in December, he denied having received any tickets while he worked for Lynn's. On May 26, 1993, counsel for the defendants received the "errata sheet" from Mr. Marsh, in which he changed his deposition answer from "No" to "After the accident in question I received a ticket for speeding in Illinois." This change and its timing have caused considerable discussion in papers filed by counsel, and a request by Mrs. Wanke for imposition of sanctions against the defendants pursuant to Fed.R.Civ.P. 11. The court will address the Rule 11 motion first.

Mr. Marsh's deposition was taken on December 14. It appears that the court reporter before whom the deposition was taken indicated that the deposition would not be filed without the errata sheet, and Mr. Marsh's employment as an over-the-road driver made it inconvenient for him to sign the deposition. As a result, the deposition still had not been filed in May; Mr. Marsh had not completed the errata sheet. Mr. Marsh's counsel received the errata sheet from Mr. Marsh some time in May, although the date is unclear from this record. The record reflects that the motion *in limine,* which was based on Mr. Marsh's amended deposition, was filed with the court on May 24 and served on Mrs. Wanke's counsel the

same day. On May 25, Mrs. Wanke's counsel called the court reporter and insisted that the unsigned deposition be filed, apparently to enable him to refer to it in the plaintiff's response to the motion *in limine*. Mr. Marsh's counsel reports that on May 26, he inadvertently sent the errata sheet to the wrong court reporter. The record before the court does not disclose the errata sheet's present whereabouts.

Mrs. Wanke seeks imposition of sanctions based on the defendants' representations to the court regarding deposition changes that have not been made. The defendants contend that the plaintiff's attorney caused the misunderstanding by insisting that the deposition be filed without the errata sheet.

There is less to this dispute than meets the eye. Mrs. Wanke's attorney not only was well within his rights in insisting that the deposition be filed on May 25, he showed remarkable patience. Fed.R.Civ.P. 30(e) provides in part:

> If the deposition is not signed by the witness within 30 days of its submission to the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

Thus, Mrs. Wanke had the right to insist upon the submission of the unsigned deposition at any time after January 14, regardless of Mr. Marsh's status as an over-the-road truck driver.

This does not end the inquiry, however. A deponent has the right, also under Rule 30(e), to make changes upon reading the transcribed deposition:

> Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign.

Thus, Mr. Marsh, too, was well within his rights in making the changes, for which he offered reasons. With the changes having been made, defendants' counsel properly could rely upon and refer to the changes, although it is apparent that plaintiff's counsel had not (and, indeed, still may not have) received the changes.

There has been no Rule 11 violation. A simple telephone call from either counsel could have averted the misunderstanding.

■ None of this, however, resolves the motion *in limine*. By the better view, Mr. Marsh's change to his deposition testimony does not erase his earlier answer; both remain in the record, available for use pursuant to the rules of evidence. *Lugtig v. Thomas*, 89 F.R.D. 639, 642 (N.D.Ill.1981). Accordingly, the change in Mr. Marsh's deposition testimony does not affect Mrs. Wanke's right to use the earlier answer in evidence. The earlier answer's admissibility is governed by the rules of evidence, not the errata sheet.

■ Mrs. Wanke contends that the May 28 speeding ticket is relevant in light of eyewitnesses who will testify that Mr. Marsh was driving too fast for conditions, and an expert witness who will opine that Mr. Marsh was travelling in excess of 60 miles per hour before braking, just before the Wanke collision. Mrs. Wanke argues that "the speeding ticket Kwame P. Marsh received the very next time he drove a truck following the accident is relevant as part of the res gestae regarding the propensity of Kwame P. Marsh to speed."

■ The phrasing of the plaintiff's argument carries the seeds of its own defeat. Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule is intended to preclude evidence of a person's propensity as proof of the person's conduct on the occasion at issue. *United States v. Sanders*, 964 F.2d 295, 298–299 (4th Cir.1992). Indeed, one leading treatise refers to the underlying

premise of Rule 404(b) as the "propensity rule". 22 C. Wright & K. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5232 (1978). Rule 404(b) applies to civil cases as well as to criminal cases. *Hopson v. Frederickson*, 961 F.2d 1374, 1379 (8th Cir. 1992).

Mrs. Wanke's argument rests squarely on the chain of inferences prohibited by Rule 404(b): because Mr. Marsh had a propensity to drive a truck too fast, it is more probable that he was driving too fast just before he struck Mr. Wanke. Accordingly, the proof fails the first prong of this circuit's test for admissibility under Rule 404(b). *United States v. Schweihs*, 971 F.2d 1302, 1311 (7th Cir.1992).

■ The customary secondary argument for admissibility of such evidence is Rule 406, which allows evidence of a person's habit to prove that the person's conduct on a particular occasion was in conformity with the habit. Habit is "the type of nonvolitional activity that occurs with invariable regularity." *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C.Cir.1989). Arguably, if it could be shown that Mr. Marsh had a "habit" of driving too fast whenever he was behind the wheel of a truck, evidence of the May 28 incident would be admissible. *But see Henry v. Cline*, 275 Ark. 44, 626 S.W.2d 958 (1982) (evidence insufficient to establish habit of speeding on a particular road). Rule 406(b), however, requires that habit be proven "by specific instances of conduct sufficient in number to warrant a finding that the habit existed". One incident simply is too few. *United States v. Holman*, 680 F.2d 1340, 1351 (11th Cir.1982); *Utility Control Corp. v. Prince William Constr. Co., Inc.*, 558 F.2d 716, 721 (4th Cir.1977).

■ Thus, the Federal Rules of Evidence bar evidence of Mr. Marsh's May 28 speeding ticket[1] to prove that he was travelling too fast on May 26. A trier of fact might find that Mr. Marsh lied about the speeding ticket at his deposition, but the asking of a question at a deposition does not make the answer admissible. The original deposition answer is inconsistent with the latter answer, but, for the reasons discussed above, Mrs. Wanke may not inquire into the May 28 ticket at trial unless the defendants first open the door. *See Bonilla v. Yamaha Motors Corp.*, 955 F.2d 150, 154–155 (1st Cir. 1992) ("This does not mean, however, that Yamaha had the right to question Bonilla about the 1981 and 1987 speeding violations simply in the hope that he would deny them, thus opening up the 'red herring' for impeachment."). Accordingly, the first answer will not (unless the defendants open the door) be inconsistent with any trial testimony.

Accordingly, the defendants' motion *in limine* with respect to the May 28 traffic ticket must be granted.

### b. Tailgating Complaint

■ Lynn's apparently received an unsolicited telephone call two to three weeks after the Wanke collision in which the caller complained about "tailgating" by Mr. Marsh. Mrs. Wanke contends that Lynn's should not have hired Mr. Marsh as a driver, and, in any event, should have discharged him long before the Wanke collision. She explains that the telephone

> complaint which was received approximately two weeks after the accident illustrates a *pattern* of intentional malfeasance by Lynn's which was entirely consistent with the pattern established when Marsh was hired through his three months of employment prior to the accident. It is also directly illuminating on the character of Kwame P. Marsh and should thus be admitted under Rule 404.

The comments in the preceding paragraphs about proof of Mr. Marsh's character (and habit) apply with equal force here. The Seventh Circuit has stated that "[t]he inference from 'pattern' by itself is *exactly* the forbidden inference" under Rule 404(b). *United States v. Beasley*, 809 F.2d 1273, 1278

---

1. The defendants argue that the evidence is a collateral matter. This would be true of the ticket itself, but not Mr. Marsh's testimony about the ticket. The collateral evidence applies only to extrinsic proof, and not to topics for cross examination. *See Taylor v. National R.R. Passenger Corp.*, 920 F.2d 1372, 1375 (7th Cir.1990).

(7th Cir.1987). Here, however, the pattern Mrs. Wanke wishes to establish is that of Lynn's rather than Mr. Marsh. For this purpose, however, the post-accident complaint of tailgating simply is not probative, and hence is not relevant under Rule 401 or admissible under Rule 402.

Mrs. Wanke apparently argues that the failure to dismiss Mr. Marsh after receiving the telephonic complaint demonstrates a pattern of malfeasance by Lynn's. Post-injury conduct may, in rare cases, be probative of a consistent attitude existing before the injury, see, e.g., Dykes v. Raymark Industries, Inc., 801 F.2d 810, 818 (6th Cir.1986), cert. denied, 481 U.S. 1038, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987), but this is not such a case. First, it appears from the summary judgment record that the post-injury complaint was the first indication (other than the Wanke collision itself) of any unsafe conduct by Mr. Marsh that threatened others' safety; a failure to act on the first such complaint does not disclose an attitude extant before the complaint. Second, if Mrs. Wanke's point is that Lynn's should have dismissed Mr. Marsh as a result of the tailgating complaint, the evidence proves nothing because Mr. Marsh was dismissed within a week or two of the complaint.

 Even if the court is wrong, and the evidence of the tailgating complaint is probative of some fact in issue, Rule 403 would bar admissibility. As discussed above, the evidence cannot be admitted, or used by the jury, as proof of Mr. Marsh's propensity toward, or pattern of, unsafe driving. If the evidence has some slight probative value to show Lynn's pre-injury attitude, that probative value is substantially outweighed by the risk that the jury would, even if properly instructed, draw the forbidden inference from the evidence.

Accordingly, the defendants' motion in limine with respect to the tailgating complaint should be granted.

### c. Dismissal of Mr. Marsh

 As noted above, Lynn's dismissed Mr. Marsh about four weeks after the Wanke collision. The defendants argue that Mrs. Wanke should be barred from presenting evidence of the dismissal. In support of their claim, Lynn's and Mr. Marsh cite two Indiana cases, that are not authoritative in federal court, and Rule 407 of the Federal Rules of Evidence. Mrs. Wanke relies on Rule 407 in support of admissibility.

 Rule 407 provides that evidence of post-event measures that would have reduced the likelihood of the event at issue if taken earlier is not admissible to prove negligence or culpable conduct in connection with the event. The rule encompasses post-event dismissal or discipline of an employee responsible for the event. Hull v. Chevron U.S.A., Inc., 812 F.2d 584, 586 (10th Cir. 1987); Maddox v. City of Los Angeles, 792 F.2d 1408, 1417 (9th Cir.1986).

The exclusionary provision of Rule 407 does not apply if the evidence of subsequent remedial measures is "offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Mrs. Wanke contends that evidence of Mr. Marsh's dismissal is admissible to show the feasibility of dismissing Mr. Marsh before the Wanke collision. Evidence of subsequent remedial measures is, however, admissible to show feasibility only if the opponent disputes the measure's feasibility. Nothing in the summary judgment record suggests that Lynn's contends that Mr. Marsh could not have been dismissed before May 26, 1992; without such a contention, Rule 407 prohibits the evidence. Rabb v. Orkin Exterminating Co., 677 F.Supp. 424, 429 (D.S.C.1987); see also Gauthier v. AMF, Inc., 788 F.2d 634, 638 (9th Cir.), modified, 805 F.2d 337 (1986); Federal Rules Advisory Committee Note, 56 F.R.D. 183, 226 (1972); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 407[04] (1992); 23 C. Wright & K. Graham, Jr., Federal Practice and Procedure: Evidence § 5288 (1980).

Should Lynn's or Mr. Marsh place in issue the feasibility of an earlier dismissal of Mr. Marsh, Mrs. Wanke might be allowed to present evidence of the ultimate dismissal. Until that time, however, Rule 407 prohibits the evidence, and the defendants' third motion in limine must be granted.

#### 4. Disorderly Conduct Arrests

Mr. Marsh was arrested in 1983 and 1986 for disorderly conduct; both charges were dismissed. The defendants move to exclude evidence concerning those events. Mrs. Wanke contends that the evidence is admissible under Rules 607 and 608 of the Federal Rules of Evidence.[2] Rule 607 comes into play only if Mrs. Wanke calls Mr. Marsh as a witness, in which event the rule allows her to impeach him, but does not prescribe the methods by which that impeachment may be accomplished. Rule 608(a) allows a witness' credibility to be attacked by opinion or reputation testimony about the witness' truthfulness, but evidence of the prior arrests is not opinion or reputation testimony.

■■■ If the evidence is to be admissible, authority must be found in Rule 608(b):

> **(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Prior arrests for disorderly conduct are not, on their face, probative of truthfulness. *See, e.g., West v. Love,* 776 F.2d 170, 175–176 (7th Cir.1985) (unrelated threat to kill not probative of truthfulness); *United States v. Hill,* 550 F.Supp. 983, 990 (E.D.Pa.1982), *aff'd,* 716 F.2d 893 (3rd Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984) (prior arrest for being disorderly person not probative of truthfulness). Nothing in the record before the court suggests that Mr. Marsh's disorderly conduct arrests involved anything reflective of veracity.

Neither Rule 607 nor Rule 608 authorizes the use of Mr. Marsh's prior disorderly conduct arrests for impeachment purposes. Accordingly, the defendants' fourth motion *in limine* must be granted.

#### 5. Pre–Hire Physical Exam

The defendants' fifth motion *in limine* seeks to exclude evidence that Lynn's did not give Mr. Marsh a physical examination when he was hired. Mrs. Wanke indicates that she does not intend to make this an issue at trial. Presumably, then, she has no objection to the motion, and the court accordingly grants the motion.

#### 6. Arrest for Theft/Possession of Stolen Property

In July 1991, a criminal complaint was filed against Mr. Marsh for "THEFT POSSESSION STOLEN PROPERTY". The following month, the complaint was stricken on the State's motion, with leave to reinstate. The defendants' sixth motion *in limine* seeks to exclude evidence of that arrest. Mrs. Wanke responds with several arguments, most of which already have been answered.

a. Mrs. Wanke argues that the 1991 arrest should be admissible because Mr. Marsh did not disclose it when asked at his December 14 deposition.[3] As discussed above, however, the giving of an answer at a deposition does not make the answer admissible at trial under the rules of evidence.

■■■ b. Mrs. Wanke argues that Mr. Marsh's character for truthfulness is in issue in light of his having claimed to have seen a car that seven other eyewitnesses did not see. Thus, she contends, the conviction is

**2.** Mrs. Wanke's response also addresses a 1991 arrest for "theft possession stolen property". The defendants' motion *in limine* does not seek exclusion of anything other than disorderly conduct arrests; the court limits its ruling accordingly.

**3.** The other "change" Mr. Marsh made to his deposition transcript relates to his address. At his deposition, Mr. Marsh was asked whether the two disorderly conduct arrests and a ticket for running a red light were the only arrests he could remember. Originally, Mr. Marsh answered, "Right." The errata sheet changes that answer to, "I was arrested in Chicago for theft possession of stolen property but the charges were dropped."

admissible as proof of that character for truthfulness under Rule 405 of the Federal Rules of Evidence. Under Rule 405(b), however, a person's character may be proven by specific instances of conduct only "in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." This rule applies when a person's character is a material fact the determines the parties' rights and liabilities under the substantive law. *Perrin v. Anderson,* 784 F.2d 1040, 1045 (10th Cir. 1986); *see* M. Graham, *Handbook of Federal Evidence* § 405.2, at 253–255 (3rd ed. 1991). Indiana law does not require Mrs. Wanke to prove Mr. Marsh's character as an element of any of her claims, and Mr. Marsh's character presents no ground for defense for Lynn's or Mr. Marsh.

c. Mrs. Wanke argues that Mr. Marsh's 1991 arrest is probative of the lack of care shown by Lynn's when it hired Mr. Marsh. The law contains no prohibition against Lynn's inquiring into a prospective driver's non-traffic criminal record, and Lynn's failure to conduct such a background check, Mrs. Wanke argues, subjected the motoring public and her husband to a driver of poor character and questionable veracity. This argument would have more force had Mr. Marsh been accused of stealing Mr. Wanke's property rather than his life. Mrs. Wanke has ventured no showing that Lynn's would not have hired Mr. Marsh as a truck driver had it known that he had faced a theft charge that was dismissed a month later. If, instead, the point to be made is that Lynn's made no check, that failure can be shown (if relevant) by evidence other what a check would have disclosed.

 d. Mrs. Wanke also argues the prior arrest is admissible under Rule 608(b), a provision discussed with respect to the defendants' fourth motion *in limine.* This argument presents a closer question. Admissibility under Rule 608(b) requires that the prior act be probative of the person's character for veracity. *United States v. Lashnett,* 965 F.2d 179, 183 (7th Cir.1992). Theft and possession of stolen property may or may not involve an intent to deceive; if the act involved no such intent, it should not

be admitted under Rule 608(b). Thus, in *United States v. Sellers,* 906 F.2d 597, 603 (11th Cir.1990), the district court properly precluded impeachment based on a prior unrelated theft, for which the charges eventually were dropped, because theft has no bearing on truthfulness. In another context, the Seventh Circuit recently held that "petty shoplifting does not in and of itself qualify as a crime of dishonesty under Rule 609", *United States v. Amaechi,* 991 F.2d 374, 379 (7th Cir.1993), thus excluding evidence of conduct that resulted in a conviction.

Perhaps Mr. Marsh engaged in the conduct that gave rise to the criminal charge, and perhaps that conduct involved deception or otherwise demonstrates a lack of veracity; the record before the court would not allow the court to make either of these determinations. Accordingly, the court will grant the defendants' sixth motion *in limine,* subject to reconsideration if Mrs. Wanke is able to demonstrate more than she has thus far.

### 7. Extramarital Affair

Mrs. Wanke has filed a motion *in limine,* ominously entitled her "first", to exclude any evidence that Mr. Wanke may have had an extramarital affair. Apparently, discovery has indicated that Mr. Wanke may have had an affair ten years or more ago; the court has not been referred to anything indicating that the affair continued beyond that point. Mrs. Wanke argues that any such evidence would be hearsay and irrelevant.

 Although the hearsay ground may have been well-taken when the motion was filed, the court believes Mrs. Wanke since has waived that objection. At the time of the motion, the only deponents to have referred to the affair were Mrs. Wanke and Mr. Wanke's supervisor, neither of whom were alleged to have been participants in the extramarital affair. The defendants then scheduled the deposition of the person said to have been the other participant in Mr. Wanke's affair. The plaintiff moved to quash the subpoena to spare the deponent embarrassment, and the court granted the motion to quash.

The relevancy issue remains. The defendants present two arguments in support of relevancy. First, they believe the plaintiff intends to present evidence that the affair did not occur. This argument misapprehends the motion; if granted, the order *in limine* will bar any reference to an affair, barring the plaintiff as well from proving Mr. Wanke's faithfulness.

■■■■■ Second, the defendants rely on *Strelecki v. Fireman's Insurance Co. of Newark*, 88 Wis.2d 464, 276 N.W.2d 794 (1979), in which a decedent's extramarital affair was held to be relevant to the surviving spouse's claim for loss of society and companionship. The *Strelecki* opinion contains too few facts for the court to compare that holding with this case; in any event, the admission of evidence over a relevancy objection is a matter of trial court discretion. *Rodriguez v. Anderson*, 973 F.2d 550, 552–553 n. 3 (7th Cir.1992).

The court does not believe that an affair that began and ended a decade before Mr. Wanke's death could have any probative value in determining the amount of damages Mrs. Wanke might need to compensate her for loss of consortium, love, and affection. If some trace of probative value can be found, it is overwhelmingly outweighed by the risk of jury confusion and waste of time inherent in the pursuit of the evidence and its answering evidence. The court will grant the plaintiff's first motion *in limine.*

### 8. Sufficiency of Response to Request for Admission

■■■■ Finally, the defendants have filed a motion to determine the sufficiency of Mrs. Wanke's answer to one of their requests for admissions. Mrs. Wanke's response was, "DENIED"; the defendants ask the court to rule that the request was admitted, on the ground that the fact stated in the request is true. The defendants cite no authority for this request apart from Rule 36(a) of the Federal Rules of Civil Procedure: "If the Court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served."

Mrs. Wanke's answer complies with the requirements of Rule 36(a):

> The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

Mrs. Wanke's answer did not run afoul of any of those requirements. An inaccurate answer clearly and definitively made is not an insufficient answer under Rule 36(a). If the defendants believe Mrs. Wanke's answer is incorrect, they have at least three options:

(a) The defendants may prove the matter at trial, and then apply to the court for an order requiring Mrs. Wanke to pay the reasonable expenses, including reasonable attorney fees, in making that proof. Fed. R.Civ.P. 37(c).

(b) The defendants may request the court's assistance, at any pretrial conference held under Fed.R.Civ.P. 16, in "obtaining admissions of fact and of documents which will avoid unnecessary proof [and] stipulations regarding the authenticity of documents." Fed.R.Civ.P. 16(c)(3).

(c) Counsel for the defendants may telephone plaintiff's counsel and determine whether a stipulation, more narrow than the matter contained in the request for admission, can be reached without the court's intervention. The court urges the parties' consideration of this approach.

Because Mrs. Wanke's response complies with the requirements of Fed.R.Civ.P. 36(a), however, the court denies the defendants' motion to determine the sufficiency of Mrs. Wanke's answer to the request for admission.

### B. Partial Summary Judgment Motions

The defendants have moved for partial summary judgment as to the plaintiff's claim for punitive damages, and the plaintiff has moved for summary judgment as to the nonparty defense the defendants have raised under Indiana's comparative fault act.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates*, 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted).

### 1. Defendants' Motion: Punitive Damages

The defendants contend that they are entitled to summary judgment on the plaintiff's claim for punitive damages.

Punitive damages are not awarded as a matter of course under Indiana law. Such damages are intended to punish and deter wrongdoers rather than to compensate those who have been wronged. *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1022 (Ind.1986). Until recently, Indiana law had produced two tests concerning the propriety of punitive damages. In contract cases, a plaintiff was required to prove, by clear and convincing evidence, that elements of fraud, malice, gross negligence, or oppression mingled with the breach, and the evidence was inconsistent with the hypothesis that the wrongful conduct was the result of mistake, honest error of judgment, overzealousness, mere negligence, or other noniniquitous human failing. *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind.1988); *W & W Equipment Co., Inc. v. Mink*, 568 N.E.2d 564, 577 (Ind.Ct.App. 1991). That standard has changed within the past year: first, the Indiana Supreme Court held that a plaintiff need not present additional evidence to rebut the hypothesis of innocent conduct, and indeed, jettisoned the hypothesis while retaining the evidentiary standard, *Erie Ins. Co. v. Hickman by Smith*, 605 N.E.2d 161 (Ind.1992); then the Indiana Supreme Court held that a contract plaintiff must plead and prove the existence of an independent tort for which punitive damages may be awarded under Indiana law, *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind.1993). Accordingly, Indiana courts now may recognize but one standard applicable to both contract and tort actions, but, in any event, Indiana decisions addressing punitive damages in contract cases provide little guidance in tort cases.

Mere negligence will not support an award of punitive damages in actions arising in tort; failing to act as a reasonable person would have acted does not constitute the kind of conduct punishable by punitive damages under Indiana law. *Austin v. Disney Tire Co.*, 815 F.Supp. 285, 287 (S.D.Ind. 1993); *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d at 1023; *Lazarus Dept. Store v. Sutherlin*, 544 N.E.2d 513, 527 (Ind. Ct.App.1989), *trans. denied.* Punitive damages may be awarded only upon a showing by clear and convincing evidence that the defendants "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Bud Wolf Chevrolet v. Robertson*, 519 N.E.2d at 137; *Austin v. Disney Tire Co.*, 815 F.Supp. at 287–288. Punitive damages may be awarded upon a showing of defendants' willful and

wanton misconduct, even absent malice, ill will, or intent to injure. *Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1221 (Ind.1988).

> [T]he perverseness that public policy will permit the courts to punish is conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury.
>
> As examples of such misconduct, our decision in [*Orkin Exterminating Co. v.*] *Traina* [, 486 N.E.2d at 1023] recognized the following: conscious indifference, heedless indifference, reckless disregard for the safety of others, reprehensible conduct, and heedless disregard of the consequences.

*Picadilly, Inc. v. Colvin*, 519 N.E.2d at 1221.

■■■■ Thus, analysis ultimately turns on the actor's state of mind: whether a defendant knew of, but consciously disregarded, the likely injurious consequences of his course of conduct. *Dow Chemical v. St. Vincent Hospital and Health Care Center, Inc.*, 553 N.E.2d 144, 150–151 (Ind.Ct.App.1990); *Rose Acre Farms, Inc. v. Cone*, 492 N.E.2d 61, 70 (Ind.Ct.App.1986), *trans. denied*; *Samuel v. Home Run, Inc.*, 784 F.Supp. 548, 550 (S.D.Ind.1992). Courts must be circumspect in approaching summary judgment motions that turn on a party's state of mind, *Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988), but the party on whom the burden of proof would rest at trial still bears the burden of coming forth with evidence sufficient to establish the requisite mental state. *Corrugated Paper Products v. Longview Fibre Co.*, 868 F.2d at 914; *Arndt v. Wheelabrator Corp.*, 763 F.Supp. 396, 401 (N.D.Ind.1991), *rev'd on other grounds sub nom., Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir.1993). Further, since Indiana law requires a plaintiff to prove her entitlement to punitive damages by clear and convincing evidence, *Erie Ins. Co. v. Hickman by Smith*, 605 N.E.2d 161, the court must consider whether the plaintiff's summary judgment showing would allow a trier of fact to find that she has met that burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■■■ Mrs. Wanke contends that Lynn's conduct with respect to the hiring, training, and supervision of Mr. Marsh, the cancelling of Mr. Marsh's drug test following the accident, and the excessive speed of Mr. Marsh's truck immediately before the accident evidence a heedless disregard for the safety of others on the part of the defendants and support an award of punitive damages.

The defendants, citing *Samuel v. Home Run, Inc.*, 784 F.Supp. 548, contend that the plaintiff has done nothing more than cite to various examples of negligent conduct and has failed to present a material question of fact as to the defendants' intent. The *Samuel* court found that numerous instances of negligence of a trucking company, including the failure to obtain necessary permits and the failure to comply with applicable statutes and ordinances, failed to create a material issue of fact on the plaintiff's punitive damages claim under Indiana law because the plaintiff failed to present evidence regarding the defendant's state of mind. In so holding, the *Samuel* court interpreted Indiana law to require the plaintiff to produce evidence inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact. *See* 784 F.Supp. at 552.

Like the plaintiff in *Samuel*, Mrs. Wanke asks the court to infer that the defendants possessed a culpable state of mind based merely on instances of conduct which tended to create a dangerous situation without presenting any evidence that the defendants' conduct was inconsistent with mere negligence. *Samuel*, however, is not the last word on punitive damages under Indiana law.

In *Erie Insurance Co. v. Hickman by Smith*, 605 N.E.2d 161 (Ind.1992), the Indiana Supreme Court repudiated dicta in *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1024 (Ind.1986), which lower courts had interpreted to "cloak defendants with a presumption of non-culpability" and require plaintiffs to present evidence which excluded every reasonable hypothesis of innocent conduct to prevail on a claim of punitive damages. The Supreme Court expressly held that when the evidence supports conflicting inferences regarding the defendants'

subjective state of mind, it is error to require "further evidence inconsistent with the inference that the conduct was the result of some non-iniquitous human failing", thus repudiating the *Samuel* court's conclusion that Indiana law required the production of evidence inconsistent with honest human error. *See Erie Insurance Co. v. Hickman by Smith*, 605 N.E.2d at 162.

Although defendants no longer are "cloaked with the presumption of non-culpability", nothing in *Erie* relieves Mrs. Wanke from her burden of establishing a question of material fact on an issue which she bears the burden of proof at trial. Accordingly, the court looks to whether Mrs. Wanke has presented circumstantial evidence that either defendant consciously decided to engage in a course of conduct notwithstanding their awareness that it would very probably expose others to impending dangers. *See Austin v. Disney Tire Co.*, 815 F.Supp. at 289.

### a. Hiring and Training

Mrs. Wanke first points to the conduct of Lynn's in hiring and training Mr. Marsh as justifying the imposition of punitive damages. Viewing the evidence in the light most favorable to Mrs. Wanke, Mary Ann Brice, Lynn's former Safety Director, would falsely certify to the DOT that she had given a driving test to newly hired drivers when no test was given. Ms. Brice would provide drivers with answers to the written test in alleged violation of 49 C.F.R. § 391.31(8)(d), (e). Ms. Brice certified to the DOT that she had given Mr. Marsh the driving test; Mr. Marsh says a male mechanic gave him the test. Mr. Marsh's application said he had six months driving experience, but the truth was that he had only four, which Ms. Brice noted on the application.

Further, continuing to view the record in the light most favorable to Mrs. Wanke, Mr. Marsh's application said his license had been suspended for failing to appear in court. In fact, Mr. Marsh was arrested three times in two years for driving while suspended. Lynn's failed to inquire as to Mr. Marsh's driving record in each state in which Mr. Marsh was licensed to drive for the previous three years, as allegedly is required by 49 C.F.R. §§ 391.23(1), 391.23(b), and made no effort to check with Illinois, where the license had been suspended. Further, Lynn's violated its own policy concerning driver experience. Lynn's manual says new drivers must have two years experience in operating semi-tractors, but, between April 1991 and December 1992, Lynn's hired seven drivers, including Mr. Marsh, with less than one year of experience. Lynn's present Safety Director, Bart Murtaugh, says that based on Lynn's own standards, he would not have hired Mr. Marsh.

The court addresses each of these assertions in turn.

■ That Ms. Brice failed to give a road test and gave advance answers to written tests more than once permits an inference that the failure to administer the road test and the giving of answers was not accidental. However, the mere failure to administer a road test to Mr. Marsh personally, or the supplying of test answers even if intentional, does not demonstrate a conscious disregard for public safety. The Federal Motor Carrier Safety Regulations, 49 C.F.R. Ch. III, Part 390, do not require a road test in all instances. 49 C.F.R. § 391.33 provides that a motor carrier may, in place of a road test, accept a valid operator's license that a state has issued to him after successful completion of a road test.

When Lynn's hired Mr. Marsh, he possessed a valid commercial drivers' license ("CDL") issued by the State of Iowa. Ms. Brice has testified that she believed it was unnecessary to give Mr. Marsh a road test because he had a valid CDL, and Mrs. Wanke has presented nothing to support a contrary inference that Ms. Brice believed that a road test was necessary to insure safe drivers, yet consciously chose not to administer the test. Even if Mr. Marsh's Iowa CDL did not meet federal testing regulations, the failure to administer a road test to a driver who possessed a valid CDL does not show an intentional violation of federal regulations or a heedless disregard for the safety of others.

With respect to the written test, 49 C.F.R. § 391.35 indicates that the written test required by that section is an instructional tool

only, and a person's performance on the examination does not affect his qualifications under the rules to drive a motor vehicle. The giving of answers to a test that is for instructional purposes only, while perhaps lessening the test's educational value, does not support an inference that the defendants consciously disregarded public safety.

■ Nor does Ms. Brice's failure to check Mr. Marsh's Illinois driving record support an inference of heedless indifference. Even if the failure to check Mr. Marsh's Illinois driving record violated federal standards, the failure to check his record does not support an inference of obduracy or heedless indifference. Ms. Brice explains she believed that she did not need to check his Illinois record directly because Mr. Marsh's Iowa CDL record incorporated his Illinois record. Mrs. Wanke has presented no evidence that permits a contrary inference that Ms. Brice's failure to check Mr. Marsh's Illinois record was a product of conscious disregard to obvious safety hazards created by truck drivers with bad driving records as opposed to a misunderstanding of applicable regulations.

■ What is left, then, is Lynn's act of hiring Mr. Marsh in violation of its own internal requirement of two years experience, and Mr. Murtaugh's statement that he would not have hired Mr. Marsh under that standard. But an employer's "laxity in not following all of its own policies in the initial hiring and training of" a future tortfeasor does not suffice to establish the mental state required for an award of punitive damages in Indiana. *Orkin Exterminating Co. v. Traina*, 486 N.E.2d at 1023. Mrs. Wanke has presented nothing to suggest that drivers with less than two years' experience are inherently unsafe, or that Lynn's hired Mr. Marsh despite knowledge that his lack of experience posed an undue safety hazard.

*b. Failure to Supervise or Terminate*

■ Mrs. Wanke next contends that the failure of Lynn's to supervise Mr. Marsh adequately and terminate him before the accident warrants the imposition of punitive damages. Again viewing the evidence in the light most favorable to Mrs. Wanke, the record indicates that three weeks after Mr.

Marsh began employment on March 11, he received a reprimand for poor performance, that he received another reprimand three weeks later, and that he received a warning for poor performance three weeks later (one week before the Wanke collision); Lynn's policy is that dismissal will be considered for a driver with three warnings within any two-year period. On May 6, Mr. Marsh had an accident, and Lynn's knew of it. No one discussed Mr. Marsh's driving with him, and Mr. Murtaugh declined to dismiss him.

Further, and still viewing the facts in the light most favorable to Ms. Wanke, Mr. Marsh was ticketed for speeding on his return to Iowa after the Wanke collision, and Mr. Marsh lied about this at his deposition. Lynn's received a telephonic complaint about Mr. Marsh's tailgating a week after the Wanke collision. Lynn's dismissed Mr. Marsh because Lynn's was "not willing to continue the risk".

Still, these facts, when viewed in there entirety, would not allow a reasonable trier of fact to infer that Lynn's sent Mr. Marsh onto the nation's highways on May 26 with heedless indifference to the known safety risk he posed.

None of Mr. Marsh's three written predismissal reprimands dealt with any safety violation: in each instance, he delivered a load behind schedule. While late deliveries may constitute (in the words of the written reprimands) "not a real good effort" or even a "very poor effort" for a trucker, they do not trigger an awareness that the trucker poses a safety risk to other motorists. Indeed, one who has had three late deliveries in seven weeks might be thought less likely to be taking 35 mile-per-hour curves at 60 miles per hour. The details of the May 6 accident would not have made Lynn's aware of such a risk: Mr. Marsh apparently got lost, found himself in a narrow alley, and hit a telephone while trying to back out.

Whether Lynn's should have dismissed Mr. Marsh after the third reprimand is, in light of its stated "three reprimands in two years" policy, debatable. Mr. Murtaugh testified that it was not unusual for a new driver to receive warnings, the warnings did not

necessarily mean that Mr. Marsh was at fault, and Mr. Murtaugh believed that Mr. Marsh was "doing the safe thing to do" when he received the third warning. Even if the failure to terminate Mr. Marsh after the third reprimand constituted poor judgment, nothing in the nature of the reprimands themselves suggest that Lynn's kept Mr. Marsh on the road despite knowledge that his driving represented an undue safety hazard.

As discussed in conjunction with the motion *in limine* concerning evidence of the tailgating complaint, events occurring after the Wanke collision simply prove nothing about Lynn's knowledge or mental state before the Wanke collision. Thus, the post-accident speeding ticket and post-accident tailgating complaint could not support an inference of heedless indifference to a known risk. Similarly, Lynn's ultimate decision to dismiss Mr. Marsh rather than "continue the risk" is not probative of Lynn's mental state at the time of the collision; by the time of the dismissal, Mr. Marsh had accumulated, in less than a month, a personal injury accident, a speeding ticket, and an unsolicited complaint about his safety from a concerning motorist. Whether Lynn's recognized Mr. Marsh as a "risk" at that point says nothing of whether Mr. Marsh should have been seen as a "risk" before the Wanke collision.

### c. Cancellation of the Drug Test

■ Next, Mrs. Wanke contends that the failure to require Mr. Marsh to take a drug test following the accident in question supports an award of punitive damages. Viewed in the light most favorable to Mrs. Wanke, Lynn's manual required drug testing of a driver if an accident involved personal injury or property damage over $4,400, and Mr. Marsh was told to take a drug test, and an appointment was made for Mr. Marsh. The following morning, Mr. Murtaugh told Mr. Marsh not to take the test. Still viewing the record most favorably to Mrs. Wanke, Mr. Murtaugh lied as to the reason for telling Mr. Marsh not to take the test, saying it was because of a change in company policy, but the change in policy did not become effective until much later. Lynn's offers other expla-

nations for the test's cancellation, but the court cannot weigh such explanations at the summary judgment stage.

Again, however, post-accident conduct rarely speaks to pre-accident knowledge. As was discussed with respect to the motion *in limine* directed to the drug test evidence, a reasonable jury might view the test's cancellation as evidence that Lynn's believed Mr. Marsh would fail a drug test, and consciously sought to avoid knowledge. Driving a semi-truck while under the influence of a controlled substance surely exhibits a heedless disregard for the safety of others, and the cancelling of Mr. Marsh's drug test is relevant to whether Mr. Marsh was under the influence at the time of the accident. The test's cancellation, however, does not appear to be relevant for any other purpose. The appropriate inquiry at the summary judgment stage, then, is whether the evidence before the court, including the cancellation of the drug test, would allow a reasonable jury to find, by clear and convincing evidence, that Mr. Marsh was under the influence of drugs or alcohol at the time of the Wanke collision. Without ever actually saying so, Mrs. Wanke seems to contend that he was.

Viewing the summary judgment record in the light most favorable to Mrs. Wanke, the jury could find that Mr. Marsh said, in his deposition, that a car stopped in front of his truck, causing him to lose control and causing the collision. Nobody else saw the car Mr. Marsh says he saw. Further, eyewitness Grace Shutten reports that Mr. Marsh was acting strangely and stamping his feet strangely after the collision. She smelled no odor of alcohol on Mr. Marsh's breath.

Mrs. Wanke argues that although Ms. Shutten smelled no odor of alcohol on Mr. Marsh, "she indicated in her deposition that it was possible he still could be under the influence of drugs." The court has reviewed the deposition excerpt cited for that proposition, but can find no basis for Mrs. Wanke's description of Ms. Shutten's testimony. Ms. Shutten testified as follows:

> ... I did not smell alcohol on him but it seemed like his behavior, I mean stamping his feet seemed strange to me because he kept stamping it, but I don't

know what I'd be doing under that circumstance.

Q Did you have any reason to believe that he was under the influence of alcohol or drugs?

A From his speech, no.

Q Anything else that would suggest to you that he was under the influence of alcohol or drugs?

A No, I really don't believe—I didn't have reason to believe that, but I was wondering why he was stamping his foot. It was just such an unusual type of thing, but maybe it was just, like I said, just from being a party to something like that.

Q So you think he was stamping his foot because he was distraught over what had happened?

A Yeah.

The court does not believe that a description of conduct as "unusual" constitutes an opinion that the actor might have been under the influence of drugs. Even if such an opinion was offered, a foundation would be required to qualify Ms. Shutten as one qualified to offer such an opinion under Fed.R.Evid. 702, and no such foundation exists.

Mr. Marsh's behavior at the scene, his testimony concerning the stopped car, and the cancellation of the drug test all constitute evidence probative of whether Mr. Marsh was under the influence of drugs when he collided with Mr. Wanke. But the stamping of feet and the giving of testimony contradicted by eyewitnesses, even in combination with the aborted drug test, does not constitute clear and convincing evidence that Mr. Marsh had ingested drugs before the collision.

#### d. Speed of the Truck

■ Finally, Mrs. Wanke points to evidence which, if credited by the jury, would prove that Mr. Marsh was travelling too fast for the conditions immediately before the condition, apparently travelling into a curve at 60 miles per hour in a 35 mile-per-hour speed zone. Standing alone, evidence of excessive speed does not support an inference of heedless disregard. That a driver was driving too fast for conditions merely constitutes evidence that Mr. Marsh failed to act reasonably under the circumstances, and does not, without more, support the inference that Mr. Marsh knew that his rate of speed constituted an obvious danger yet chose to ignore that danger. *See Austin v. Disney Tire Co.,* 815 F.Supp. at 289 (running red light, without more, does not establish conscious disregard for the danger caused by conduct).[4]

#### e. Totality of Circumstances

■ Finally, the court must inquire whether the facts assumed and set out above, although individually insufficient to constitute clear and convincing evidence of heedless indifference, suffice in concert to satisfy Mrs. Wanke's burden. Comparison to *Orkin Exterminating Co. v. Traina,* 486 N.E.2d 1019, is more than instructive. In *Traina,* the employee had received "limited" training from an Orkin supervisor whose prior experience in training personnel "had been minimal", and who had hired the employee without following the company's hiring procedures. The supervisor did not follow the company's policy of conducting a five-year employment background check; such a check would have disclosed that the employee had been suspended from one earlier job and fired from another. The employee received " 'on the job training for at least a couple of days' ", 486 N.E.2d at 1021, largely from others employed in the same capacity instead

---

4. The defendants moved for leave to submit a brief of recent legal authority discussing *Austin,* as well as cases from other jurisdictions, and the plaintiff orally objected to that motion at the June 2 hearing on the plaintiff's motion to quash a deposition subpoena. Because the court's research already had disclosed *Austin,* the motion is denied and the objection overruled as moot as to the *Austin* case itself. As to the defendants' citation to additional authority from other jurisdictions, the plaintiff's objection is well-taken. Briefing has long been closed on the summary judgment motion; had the defendants wished the court to look to case law from other jurisdictions for guidance, they had ample opportunity to point out relevant caselaw in their initial briefs. Accordingly, the defendants' motion is denied.

of from the supervisor. The employee began unsupervised work on his fourth day of employment.

Ten days later, the supervisor found the employee with a miniature gun, which the employee said he carried for protection from dogs. The supervisor reprimanded him and said dismissal would follow if the gun remained, and the employee said he would get rid of it. The supervisor accepted that assurance. A week later, the employee carried the gun into a private home where he was to work; the gun discharged, injuring the homeowner.

The facts of *Traina* are far more egregious than those portrayed in the summary judgment materials in this case. It may be assumed that carrying a loaded gun in a shirt pocket into a home is no less culpable than driving a semi tractor into a curve twenty-five miles over the speed limit. Orkin and Lynn's each violated their own hiring and training policies, but Mr. Marsh, at least, had a state-issued CDL and some prior training and experience as a truck driver. But while Orkin was aware of its employee's history of carrying a gun, no information in this record would have indicated to Lynn's that Mr. Marsh posed a risk to public safety as distinct from the risk of a late delivery or the risk of failing to appear in court.

In *Traina,* the award of punitive damages was reversed; the supreme court found the plaintiff's evidence "woefully lacking" under Indiana's standard for punitive damages. Although much of what was said in the *Traina* opinion since has been held to be *dicta, Erie Ins. Co. v. Hickman by Smith,* 605 N.E.2d 161, its holding remains the law of Indiana. Judged by that standard, Mrs. Wanke has not presented either circumstantial or direct evidence that would permit a jury to find, by clear and convincing evidence, that either Lynn's or Mr. Marsh consciously decided to engage in a course of conduct notwithstanding their awareness that it would very probably expose others to impending dangers. The defendants' motion for partial summary judgment on the issue of punitive damages must be granted.

*2. Plaintiff's Motion: Non–Party Defense*

■ The defendants have named Carl Joseph and Ernest Hornyak as non-parties pursuant to the provisions of Indiana's comparative fault act, IND.CODE 34–4–33–10. Messrs. Joseph and Hornyak were hitchhikers located on the side of the road near the site of the accident at issue. Mrs. Wanke seeks summary judgment on the non-party defense on the ground that the deposition testimony of Mr. Marsh and other eyewitnesses establishes that the hitchhikers did nothing to cause the accident.

The court disagrees with Mrs. Wanke's characterization of the relevant deposition testimony. Read in a light most favorable to the defendants, Mr. Marsh's deposition testimony permits the reasonable inferences that two hitchhikers had caused an unidentified automobile driver travelling in front of Mr. Marsh's truck to stop at the side of the road near the point where the accident occurred. Contrary to Mrs. Wanke's assertion, nowhere in his testimony does Mr. Marsh deny that the hitchhikers caused the accident.

The other witnesses testified that they were not in a position to see whether a car had slowed or stopped in front of Mr. Marsh's vehicle, and that Mr. Marsh's truck quickly swerved or jackknifed, as though he were trying to avoid something immediately in front of him. Even Ernest Hornyak, one of the hitchhikers, while denying that anyone stopped to pick him up, acknowledged that a gold car was in front of Mr. Marsh, and expressed concern that his and his friend's actions were the cause of the accident.

■ The court cannot weigh evidence at the summary judgment stage. *Williams v. Anderson,* 959 F.2d 1411, 1413 (7th Cir.1992). Nobody but Mr. Marsh claims to have seen the car, but few claim to have been in a position to see what Mr. Marsh says he saw. Such evidence hardly produces so one-sided a set of facts that no reasonable juror could find it more likely than not that the hitchhikers played no role in causing the collision. Accordingly, the plaintiff's motion for partial summary judgment must be denied.

**606**

## C. Conclusion

For the foregoing reasons, the court now:

(1) DEFERS ruling on the defendants' first motion in limine, which addresses part of the opinion testimony of Dr. Bernard;

(2) DENIES the defendants' second motion in limine, which addresses the cancellation of the drug test;

(3) GRANTS the defendants' third motion in limine, which addresses the May 28 speeding ticket, the tailgating complaint, and the dismissal of Mr. Marsh;

(4) DENIES the plaintiff's motion for sanctions under Fed.R.Civ.P. 11 based on the filing of the defendants' third motion in limine;

(5) GRANTS the defendants' fourth motion in limine, which addresses Mr. Marsh's disorderly conduct arrests;

(6) GRANTS the defendants' fifth motion in limine, which addresses whether Mr. Marsh was given a pre-hiring physical examination;

(7) GRANTS the defendants' sixth motion in limine, which addresses Mr. Marsh's arrest for theft/possession of stolen property;

(8) GRANTS the plaintiff's first motion in limine, which addresses any extramarital affair by the plaintiff's decedent;

(9) DENIES the defendants' motion to determine the sufficiency of Mrs. Wanke's answer to the request for admission;

(10) GRANTS the defendants' motion for partial summary judgment on the issue of punitive damages; and

(11) DENIES the plaintiff's motion for partial summary judgment on the non-party defense.

SO ORDERED.